UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:13CV-01073-CAS |
| EL TOVAR, INCORPORATED and | ) ) |
| STEVEN D. PARRISH, | ) ) |
| Defendants. | ) |

## RECEIVER'S REPORT

The Receiver, by and through his undersigned counsel, hereby gives Notice of Filing the Receiver's First Interim Report.

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 3, 2014, a true and correct copy of the foregoing Receiver Report was filed with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By: _____
Eric C. Peterson
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090
(314) 241-8624 (Facsimile)
(314) 345-4713
ecp@greensfelder.com

*Attorneys for SH Equities, LLC,
Receiver for El Tover Incorporated*

1455920

# **RECEIVER'S REPORT**

SH Equities, LLC ("Receiver") was appointed Receiver on November 4th, 2013 for El Tovar, Inc & Steven Parrish concerning real estate properties located at 3803 Shaw Blvd, St. Louis, MO 63110 and 4226-4228 Cleveland Ave, St. Louis, MO 63110 ("Properties").

## **General Information**

Receiver contacted the Defendant on November 6th, 2013 requesting information on the Properties and set a meeting for the November 7th to deliver the materials.  Receiver obtained a portion of the materials at the meeting.  However, Receiver did not receive what it considers "especially critical" to the management of the Properties, which are, operating funds, security deposits, November rents, current & active insurance policies, deferred maintenance violations from the City of St. Louis and permits for occupancy and permits for maintenance repairs.

During the meeting with the Defendant the Receiver was informed of the following.

1. Security deposits were used as November rent which all tenants were notified by Defendant on October 22; however, a tenant (Lindsey Cook) in unit 4226 1st Flr of the Cleveland property mailed her rent to PNC Bank and therefore Defendant turned over to Receiver a security deposit of $832.
2. No operating funds existed.
3. Tenant in 1W, Josh Crook, is under a six month lease under a "barter" agreement with Defendant and pays no rent.
4. Receiver obtained tenants, leases, rent roll, service stair plans & permit, insurance policies (expired), utility information, and photo copied receipts of purchases made by El Tovar, Inc from retailers like Home Depot.
5. None of the following existed, maintenance records, permits, income statements, accounting records, bank statements, City violations, expense data and tenant communications.

Defendant stated should he come across any other information he would turn it over. The Defendant was again asked via email dated November 21st to turn over bank statements, security deposits, and November rents.  Receiver, Receiver's attorney, Defendant and Defendant's attorney had a conference call on December 3rd to discuss what exactly the Receiver was requesting.  The Defendant stressed that he would not

1

provide bank information or operating funds to the Receiver. Hours prior to the December 5th hearing the Defendant turned over bank records and during the hearing the Defendant turned over the last of the bank records. From those records the Receiver determined there was $11,492.72 in El Tovar's Inc checking account and the court demanded that the Defendant turn over those funds to Receiver.

Receiver mailed an introductory letter and contact questionnaires to tenants and informed them that Shawn Henry of SH Equities, LLC was appointed Receiver and would be managing the Properties from this point forward. The tenants were instructed to fill out the forms but only one did, Lindsey Cook at 4226 Cleveland Ave. Receiver made repeated attempts to contact the tenants by visiting their residences and in-writing but was unsuccessful. Receiver found this odd given past receivership experiences. Receiver found a possible cause when the Defendant sent Receiver an email containing a letter the Defendant had written to the Tenants on November 18 stating he "wholly expects to reclaim my property from the court-appointed trustee and the billion-dollar-bully PNC Bank." The Defendant goes on to say that should the tenant have any issues which are not timely resolved, please let him know and he will make every effort to redress the matter to their satisfaction. Receiver believes that this interference and perhaps other undocumented conversations between Defendant and tenants has confused them and provides a possible reason for their lack of communication.

This scenario was again replayed when Receiver discovered from Defendants insurance agent that the insurance policies had lapsed as of October. Receiver emailed agent a copy of Receiver Order and requested that the policies be reinstated immediately which the agent was willing to do and mentioned it would take a day or so to complete. Upon following up with agent on the status of these policies the agent said he was not going to renew these policies based on a conversation he had with the Defendant. This left the Properties without insurance until such time as suitable insurance could be found. Suitable insurance was obtained and the properties are insured.

**Condemned Service Stairs Report**

Receiver has contacted several architects and structural engineers to provide drawings for the service stair replacement. The bids ranged from $2,750 to over $8,000. Receiver selected the bid for $2,750 and the drawings were completed on December 16th, 2013.

A bid to replace the service stairs was received from CKL Construction at a total cost of $59,000. A second bid was received from Haisler Construction in the amount of $65,300. Receiver obtained a third bid from Raineri Construction of $29,608.71. This bid is considerably lower than the others therefore some additional analysis and discussions with contractors need to be made to make sure these bids are comparable.

Receiver contacted Dave Sieges, an inspector, from the City of St. Louis to understand the existing code violations and how to remedy them since Receiver did not obtain the notifications from Defendant. Receiver was informed that the entire property was condemned because the service stairs were condemned. Mr. Sieges mentioned the City has repeatedly notified the Defendant the service stairs were in violation of City code but nothing had been done. Mr. Sieges suggested Receiver should contact Ross Urlich, City Inspector) to discuss more accurately the violations and their remedies as Mr. Sieges primarily deals with the court proceedings for the violations. Receiver met with Mr. Urlich and Mike Frahlman from PNC Bank at the Shaw property to fully understand the violations and develop a plan to move forward. It was determined in this meeting that Mr. Urlich didn't see how the City would lift the condemnation of the service stairs given the condition of the stairs even if they were repaired based on the Defendants repair plan. Mr. Urlichs' supervisor confirmed that assumption and said a replacement of the service stairs was needed.

Receiver met with Mr. Urlich & Mr. Sieges on December 20th to review the plans for the new stairs. In that meeting they recommended to Receiver that the rear entrances to the units need to be boarded up and the steps from the ground to the first level be removed. This was completed on December 28th, 2013. They also mentioned that these plans needed to be reviewed by the Cultural Resources Office which Receiver was unaware of. Receiver has contacted the Cultural Resources Office in City of St. Louis to determine if these plans will be approved. The office stated they are "OK" with the wood construction but would like the historic handrails to be in a "Soulard Style" and the entire structure needs to be coated in an opaque stain.

Defendant is scheduled to appear in Circuit Court of the City of St. Louis on January 2, 2014 at 1pm, to address the service stair violations. Receiver will attend this hearing to inform the court of the appointment of a receiver and update the court on the actions taken to remedy the violations to date.

3

**Financial Report**

- *Rent Collection.* December rent for the Properties totals $4,164.50. Receiver has collected $3,814.50 from existing tenants except $350 for Ashlie Haines' portion of Shaw, 2E. Haines and Zesch (tenants in Shaw 2E) informed Receiver that their rent is $700 because the gas bills have been higher than expected due to Defendants failure to repair the furnace so the Defendant reduced their rent by $100 per month.

- *Operating Expenses.* At the time of Receivers appointment there was an outstanding amount of $13,056.29 comprised of water, sewer, trash, electric, insurance premium, and gas. PNC Bank and Receiver have eliminated these outstanding expenses.

- *Insurance.* The Properties have been insured by a new carrier, with a down payment cost of $1,657.35 and a monthly premium payment of $377.

- *Receiver Fees & Expenses.* Receiver is due $2,100.22, comprised of $2,000 receivership and management fees and $100.22 in expenses.

**{Profit and Loss Statement Next Page}**

4

3:28 PM
01/02/14
Accrual Basis

# SH Equities, LLC / El Tovar Inc.
## Profit & Loss
### November 4 through December 31, 2013

|  | Nov 4 - Dec 31, 13 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| 40000 · Rental Income | 17,322.72 |
| 41000 · Utility Recovery | 86.50 |
| **Total Income** | 17,409.22 |
| **Expense** | |
| 60100 · Locks & Keys | 235.82 |
| 63300 · Insurance Expense | 377.10 |
| 63700 · Landscaping and Groundskeeping | 180.00 |
| 66500 · Postage and Delivery | 7.36 |
| 66700 · Professional Fees | |
| 66710 · Architecture Fee | 2,750.00 |
| Total 66700 · Professional Fees | 2,750.00 |
| 66800 · Property Management Fees | 1,000.00 |
| 67200 · Repairs and Maintenance | 360.50 |
| 68600 · Utilities | |
| Electric | 945.68 |
| Gas | 121.76 |
| Sewer | 174.57 |
| Trash | 835.87 |
| Water | 458.79 |
| Total 68600 · Utilities | 2,536.67 |
| 69000 · Receivership Expense | 21.54 |
| **Total Expense** | 7,468.99 |
| **Net Ordinary Income** | 9,940.23 |
| **Net Income** | 9,940.23 |

5

## Physical Report

### 3803 Shaw Blvd, St. Louis, MO

This property is a six unit multi-family property made up of 3 bedroom units on three floors. The property was constructed in 1916 out of masonry materials. It requires additional preventative maintenance (i.e. painting, thresholds, plastering, tuck pointing, etc) but is in an overall fair condition. The property needs a new roof at a cost of $5,944.80. The property will require some lead paint remediation but Receiver has not received that report from the environmental company.

The vacant units (3E & 3W) will require some minor repairs (painting, HVAC, tub glazing, plaster, dry wall, new dryer vent, and caulking), major expenses will be new carpet, counter tops, vanity, stove, dishwasher, garbage disposals, refrigerator and mini blinds). Estimated costs for these units is $6,500.

### 4226-4228 Cleveland Ave, St. Louis, MO

This property is a four unit multi-family property made up of 3 bedroom units on two floors. The property was constructed in 1904 out of masonry materials. It requires some preventative maintenance (i.e. painting, junk and trash removal from basement, tuck pointing, caulk window seals, etc.) however it is in fair condition. The property needs a new roof at a cost of $7,130.

The vacant unit at 4228 1st Flr is in very good condition except for the garbage disposal replacement, bathtub glazing, stove replacement and a couple rooms need to be repainted. The estimated cost for this scope of work is $2,060.

The vacant unit at 4226 2nd Flr is in very poor condition. There are pet feces and urine stains, old food containers, trash, roof leaks, and overall filth throughout the unit. The unit will need new appliances, refrigerator, stove, dishwasher, garbage disposal counter top, flooring (carpet and laminate), repainted, drywall patches, and cat urine odor remediation. The estimated cost for this scope of work excluding urine odor remediation is $7,035.

## Occupancy Report

At the date of Receiver's appointment the Shaw property was 67% occupied and the Cleveland property was 100% occupied. At the date of this filing the Shaw property remains 67% occupied but the Cleveland property is 50% and will be 25% occupied by the end of January. The Shaw property has 2 vacant units on the third floor that cannot be rented until the service stairs are replaced and the condemnation is removed. The

tenant in 1E does not appear to be living in the unit although there appears to be furniture still in the unit. This tenants lease expires on January 31, 2014 and will not be renewed because the tenant had arranged to barter services for free rent. Receiver will not barter for this tenants services but will accept a market monthly rent of the unit.

The Cleveland property has two vacancies. The 2nd floor unit in 4226 will not be tenantable for some time until the repairs noted earlier can be made. The first floor unit in 4228 is actively being marketed for lease. The tenant in unit 4226 1st flr will be moving out at the end of January. This will leave only one tenant in the property.

Receiver is actively marketing the vacancies on the Cleveland property with signage in front of the property and postings on Craigslist.

Respectfully submitted this 3rd day of January, 2014.

*[signature: Shawn McHenry]*

Shawn Henry, as Receiver for El Tovar, Inc & Steven Parrish