**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:13-CV-1073 CAS |
| v. | ) | |
| | ) | |
| EL TOVAR, INCORPORATED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on plaintiff PNC Bank, National Association's ("PNC") Motion for Summary Judgment on its Complaint and on the defendants' affirmative defenses and Counterclaims. Defendants El Tovar Incorporated and Steven D. Parrish (collectively "Defendants"), oppose the motion and it is fully briefed. For the following reasons, PNC's motion will be granted.

## I. Background

This is an action to collect on a promissory note and personal guaranty and for appointment of a receiver. In April 2007, PNC's predecessor in interest made a loan to defendant El Tovar Incorporated ("El Tovar") that was secured by a promissory note, deed of trust and assignment of leases and rents on certain real property located in the City of St. Louis, Missouri. Defendant Parrish, the President of El Tovar, executed a personal guaranty of El Tovar's debts and obligations to PNC. The promissory note matured in April 2012 and PNC made demand for full payment from both Defendants in March 2013 but payment was not made. PNC then filed this action. A receiver was appointed by consent of the parties on November 4, 2013, so Count III of the Complaint is no longer at issue. The Defendants assert various affirmative defenses and three counterclaims.

**II. Summary Judgment Standard**

The Eighth Circuit has articulated the appropriate standard for consideration of motions for summary judgment as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted).

"Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008). "To establish a genuine factual issue, a party 'may not merely point to unsupported self-serving allegations.'" Residential Funding Co., LLC v. Terrace Mortg. Co., 725 F.3d 910, 915 (8th Cir. 2013) (quoted case omitted). "In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying 'facts that might affect the outcome of the suit.'" Quinn v. St. Louis

County, 653 F.3d 745, 751 (8th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

### III.  Findings of Fact[1]

1.      Plaintiff PNC (collectively, with its predecessors in interest, "PNC") loaned El Tovar the principal amount of $536,800.00 to be repaid in accordance with a promissory note dated April 5, 2007, as later modified (the "Note").

2.      A true and correct copy of the Note is attached to the Complaint as Exhibit A, and to the Affidavit of Michael Frahlman as Exhibit C.

---

[1]      Most of the Court's Findings of Fact are taken from the Statement of Uncontroverted Material Facts submitted by PNC.  Defendants admitted most of PNC's statements of fact, and merely stated "Denied" for the six they disputed, without providing any citation to the record in support of their denials.  Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations.  Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists.  Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies.  The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts.  All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E) (emphasis added).

This local rule "exists to prevent a district court from engaging in the proverbial search for a needle in the haystack.  Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense."  Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1032 (8th Cir. 2007) (internal quotation and citation omitted).  Because Defendants failed to specifically controvert PNC's statements of uncontroverted material fact, the same are deemed admitted pursuant to Local Rule 4.01(E).

3.      The Note provides that it is to be governed by federal law applicable to the lender and, to the extent not preempted by federal law, the laws of the State of Missouri without regard to its conflicts of laws provisions.

4.      The Note is secured by a Deed of Trust dated August 31, 2001, and recorded on October 26, 2001, with the St. Louis City Recorder of Deeds Office at Book 10262001, Page 117 ("Deed of Trust") encumbering the real property commonly referred to as 1853 S. Spring Avenue, St. Louis, MO, 3803 Shaw Avenue, St. Louis, MO and 4226-28 Cleveland Avenue, St. Louis, MO (collectively the "Property").

5.      El Tovar executed the Deed of Trust, a true and correct copy of which is attached to the Complaint as Exhibit F and to the Affidavit of Michael Frahlman as Exhibit D.

6.      The Deed of Trust was subsequently modified to increase the amount secured thereby, by a recording dated April 5, 2007 and recorded on April 17, 2007 at Book 4172007, Page 033 ("Modification").

7.      El Tovar executed of the Modification, a true and correct copy of which is attached to the Complaint as Exhibit G and to the Affidavit of Michael Frahlman as Exhibit E.

8.      The Note is additionally secured by an Assignment of Leases and Rents dated as of August 31, 2001 and recorded October 6, 2001 with the St. Louis City Recorder of Deeds Office at Book 1724M, Page 535 (the "Assignment of Rents").

9.      El Tovar executed the Assignment of Rents, a true and correct copy of which is attached to the Complaint as Exhibit A and to the Affidavit of Michael Frahlman as Exhibit C.

10.     The Note went into default when El Tovar failed to pay the balance due on the maturity date.

11.     The Note provides that PNC "may delay or forgo enforcing any of its rights or remedies under this Note without losing them." The Note also provides that the "parties agree that Lender may . . . impair, fail to realize upon or perfect Lender's security interest in the collateral[.]" Note at 2 (Complaint Ex. A, Frahlman Ex. C).

12.     PNC made demand for full payment under the Note on March 7, 2013 ("Demand"), and a true copy of the Demand is attached to the Complaint as Exhibit C and to the Affidavit of Michael Frahlman as Exhibit I.

13.     El Tovar has failed and refused to pay the amount due and owing under the Note.

14.     As of June 5, 2013, El Tovar owed PNC the principal sum of $492,528.04.

15.     Defendant Steven D. Parrish ("Parrish") unconditionally guaranteed payment of the Note.

16.     Parrish signed the Guaranty dated January 30, 2004, a true and correct copy of which is attached to the Complaint as Exhibit D and to the Affidavit of Michael Frahlman as Exhibit G.

17.     PNC relied on the Parrish Guaranty in extending credit to El Tovar.

18.     Parrish reaffirmed his guaranty of the Note by signing a Consent on April 5, 2007, a true copy of which is attached to the Complaint as Exhibit D, and to the Affidavit of Michael Frahlman as Exhibit H.

19.  The Guaranty begins with the following statement:

> For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce Allegiant Bank (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or to extend other accommodations to or for the account of El Tovar Incorporated (herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of the acceleration or otherwise, of the debts, liabilities and obligations described as follows . . . .

20.     The Guaranty states in part at paragraph 7:

        The Undersigned waives any and all defenses, claim and discharges of
Borrower, or any other obligor, pertaining to Indebtedness, except the defense of
discharge by payment in full.  Without limiting the generality of the foregoing, the
Undersigned will not assert, plead or enforce against Lender any defense of waiver,
release, statute of limitations, res judicata, statute of frauds, fraud, incapacity,
minority, usury, illegality or unenforceability which may be available to Borrower
or  any other person liable in respect of any indebtedness, or any setoff available
against Lender to Borrower or any such other person, whether or not on account of
a related transaction.

21.     The Guaranty states in part at paragraph 11:

Lender shall not be required first to resort for payment of the Indebtedness to
Borrower or other persons or their properties, or first to enforce, realize upon or
exhaust any collateral security for Indebtedness, before enforcing this guaranty.

22.     PNC is the owner and holder of the Note and the Parrish Guaranty.

23.     By letter dated March 7, 2013, PNC advised Parrish that the Note was in default, that

demand for immediate payment of the balance due under the Note had been made upon El Tovar,

and that demand for payment was being made upon Parrish pursuant to his Guaranty.  A true and

accurate copy of the demand letter is attached to the Complaint as Exhibit E, and to the Affidavit

of Michael Frahlman as Exhibit I.

24.     Parrish failed to honor his Guaranty despite PNC's demands for payment on his

Guaranty of the Note.

25.     PNC advanced the sum of $11,696.23 to pay the City of St. Louis for delinquent real

estate taxes on the properties at 1853 S. Spring Avenue, St. Louis, MO and 3803 Shaw Avenue, St.

Louis, MO which were left unpaid by Defendants for the years 2011-2012, and to pay the 2013 real

estate taxes, all of which had priority over PNC's Deed of Trust.

26.     PNC advanced the sum of $12,022.65 as and for the delinquent real estate taxes on

the property at 4226-28 Cleveland Avenue, St. Louis, MO, which were left unpaid by Defendants

for the years 2010-2012, and to pay the 2013 real estate taxes, all of which had priority over PNC's Deed of Trust.

27.     PNC also advanced the sum of $9,690.01 to satisfy liens in favor of the Metropolitan Sewer District ("MSD") which had priority over PNC's Deed of Trust.

28.     The Deed of Trust provides that the sums advanced by PNC to satisfy the real estate taxes and MSD liens may be added to the principal balance of the loan.

29.     PNC conducted Environmental Site Assessments of the Property at a cost of $5,071.00.

30.     In accordance the Deed of Trust, the costs of such Environmental Site Assessments may also be added to the principal balance of the Note.

31.     PNC conducted periodic appraisals of the Properties at a cost of $5,876.00.

32.     The Note provides for a late fee equal to 5% of the unpaid portion of the regularly scheduled payment due on April 15, 2012.

33.     A late fee was assessed in the amount of $26,048.02.

34.     Through December 11, 2013, additional interest has accrued on the loan balance at the default rate of interest under the Note of 9.24% per annum, for total accrued interest of $24,190.34.

35.     The per diem interest from and after December 11, 2013 is $126.41.

36.     The Note includes the following provision regarding attorneys' fees and expenses:

**ATTORNEYS' FEES; EXPENSES**.  Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrow will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

Note at 2 (Complaint Ex. A, Frahlman Aff. Ex. C).

37.     The Deed of Trust includes the following provision regarding attorneys' fees and

expenses:

> **ATTORNEYS' FEES**.  In the event of default, Grantor agrees to pay reasonable
> attorneys' fees incurred by Bank.  Such reasonable attorneys' fees shall include,
> without limitation, paralegal fees.  Any such reasonable attorneys' fees shall be
> added to the principal amount of the Obligations, shall accrue interest at the same
> rate as the  Obligations, and shall be secured by this Deed of Trust.

Deed of Trust at 4, ¶ 22 (Complaint Ex. F, Frahlman Aff. Ex. D).

38.     The Assignment of Rents states that in the event of default, PNC shall have the right

"[t]o recover reasonable attorneys' fees to the extent not prohibited by law."  Assignment of Rents

at 2, ¶ 9.B (Complaint Ex. H; Frahlman Aff. Ex. F).

39.     The Guaranty includes the following provision regarding attorneys' fees:

> The Undersigned will pay or reimburse Lender for all costs and expenses
> (including reasonable attorneys' fees and legal expenses) incurred by Lender in
> connection with the protection, defense or enforcement of this guaranty in any
> litigation or bankruptcy or insolvency proceedings.

Guaranty at 1, ¶ 5 (Complaint Ex. D; Frahlman Aff. Ex. G).

40.     Count II of the Counterclaim, for quiet title, is moot in accordance with the terms of

the parties' Mediation Settlement.

**IV.  Discussion**

A.  PNC's Claims

PNC moves for summary judgment, asserting that it is entitled to judgment on the Note and

Guaranty as a successor in interest and because El Tovar has breached its obligations under the Note

and Parrish has failed to satisfy his obligations under the Guaranty.

1.  *Action on Note - Count 1*

Under Missouri law, to prevail on a suit on a promissory note, PNC must prove that (1) a valid promissory note exists that is signed by the maker; (2) a balance remains due on the note; and (3) demand was made upon the maker and was refused, leaving the maker in default. Pacific Carlton Dev. Corp. v. Barber, 95 S.W.3d 159, 162-63 (Mo. Ct. App. 2003).

Defendants admit the existence, execution and delivery of the Note, that PNC made demand for payment under the Note, and that Defendants failed to pay the Note amount due and owing. There is no evidence to contradict that PNC is the holder of the Note or that the Note is in default. The Defendants concede that the principal balance due at the time this action was filed was $492,529.04. The terms of the Deed of Trust allow PNC to add to the principal balance any sums advanced by it to pay delinquent taxes, to satisfy liens attaching to the Property, and to conduct environmental assessments. The Note provides for a five percent (5%) late fee as well as default interest at the rate of 9.24% per annum. The Note, Deed of Trust, Assignment of Rents, and Guaranty all provide for the recovery of attorneys' fees and expenses incurred in connection with the defaults under the loan documents.

The Defendants assert that fact issues concerning the third element of PNC's case, demand and refusal to pay, preclude summary judgment. Defendants contend that after PNC made a demand for payment, they secured alternative financing from St. John's Bank, but "in order to finalize the alternative financing, cooperation from [PNC] was necessary," and while PNC "agreed to cooperate and provide the necessary information and documents to finalize the alternative financing" it did not produce the information and the alternative financing commitment expired. See Affidavit of Steven Parrish, ¶¶ 6-14. Defendants therefore contend they were "ready, willing and able to make

payment" on the Note, but the "direct action/inaction" of PNC caused them to lose their alternative financing.

PNC replies that the record does not support a finding that the Defendants made an unconditional tender of full payment of the amount due under the matured Note, and that the Parrish Affidavit asserts only that St. John's Bank was interested in refinancing the entire loan balance. PNC states that nothing in the record contradicts that the loan matured in April 2012, demand has been made, and Defendants did not at any time tender full payment to PNC.

Under Missouri law, "Where there is an agreement to pay money, tender generally occurs when there is a combination of readiness, willingness, and the ability to pay by the indebted party." Curnutt v. Scott Melvin Transport, Inc., 903 S.W.2d 184, 190 (Mo. Ct. App. 1995) (cited case omitted). "Tender comprehends not only the readiness and willingness to pay, but the ability to do so." Ewing v. Miller, 335 S.W.2d 154, 158 (Mo. 1960). "A tender must be unconditional and unqualified to be a valid tender." Curnutt, 903 S.W.2d at 190 (citing Garney Cos., Inc. v. H & K Dev., Inc., 635 S.W.2d 85, 86 (Mo. Ct. App. 1982), and Harbaugh v. Ford Roofing Prods. Co., 281 S.W. 686, 689 (Mo. 1925)).

Here, the Defendants' evidence of tender consists only of the conclusory and self-serving affidavit of Steven Parrish. The Affidavit states that Mr. Parrish "secured financing" from another bank that was interested in refinancing the entire loan balance, but in order for Defendants to finalize the alternative financing, PNC was required to "cooperate" and "provide the necessary information and documents," but it did not do so and the alternative financing was lost. This evidence establishes only that Defendants wanted to refinance the matured Note and entered into discussion with another bank to do so. Defendants do not establish a genuine issue of material fact as to their ability to make an unconditional, valid tender to PNC, much less that they actually made such a

tender. The Court therefore concludes that PNC has established there is no genuine issue of material fact as to any of the elements of its action on the Note.

## 2. *Action on Guaranty - Count 2*

To prevail on a claim for breach of guaranty, PNC must establish that (1) Parrish executed the guaranty, (2) Parrish unconditionally delivered the guaranty to PNC, (3) PNC relied on the guaranty in extending credit to El Tovar, and (4) there is currently due and owing some sum of money from El Tovar to PNC that the guaranty purports to cover. See ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 382 (Mo. 1993) (en banc).

PNC's motion for summary judgment establishes the following: Defendant Parrish has acknowledged execution and reaffirmation of the Guaranty. The Guaranty clearly states that it is unconditional. A guaranty must be supported by consideration, but benefit to El Tovar or detriment to PNC is sufficient consideration to support the Guaranty. See Boatmen's First Nat'l Bank of Kansas City v. Roofco Sys., Inc., 852 S.W.2d 402, 403-04 (Mo. Ct. App. 1993). A recital of consideration, such as is present in the Guaranty here, is prima facie evidence of sufficient consideration to support a guaranty. See Farmers State Bank of Northern Mo. v. Huffaker, 2009 WL 812280, at *6 (Mo. Ct. App. Mar. 31, 2009); see also Gover v. Empire Bank, 574 S.W.2d 464, 468 (Mo. Ct. App. 1978). Finally, it is undisputed that there is a sum of money due and owing from El Tovar to PNC that the Guaranty purports to cover.

In response, Defendant Parrish asserts that under the Guaranty, he did not waive the defense of "discharge by payment in full." Parrish argues that the Defendants secured alternative financing and were ready, willing and able to pay until PNC "unreasonably interfered with Defendants' efforts, causing Defendants to lose the alternative financing. Defendants' counter-Claims and

Affirmative Defenses arose from [PNC's] negligence; and, therefore were not waived in the Guaranty." Defs.' Mem. Opp. at 4-5.

For the reasons discussed above, the Defendants did not make an unconditional, valid tender of full payment. Defendant Parrish does not establish the existence of a genuine issue of fact as to whether full payment occurred. The Court therefore finds that PNC has established there is no genuine issue of material fact as to the four elements of its claim on the Guaranty.

B. Defendants' Affirmative Defenses

The Court now turns to PNC's motion for summary judgment on Defendants' affirmative defenses. As a threshold matter, PNC asserts that under the language of the Guaranty, defendant Parrish waived all defenses except the defense of discharge by payment in full, so the Court should consider the affirmative defenses only on behalf of El Tovar. It is well established under Missouri law that the "liability of a guarantor is to be construed strictly according to the terms agreed upon, and a guarantor is bound only by the precise words of his contract[.]" Pelligreen v. Century Furniture & Appliance Co., 524 S.W.2d 168, 172 (Mo. Ct. App. 1975). "Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts." U.S. Suzuki Motor Corp. v. Johnson, 673 S.W.2d 105, 107 (Mo. Ct. App. 1984). "They are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and the object intended to be accomplished." Id. The Court finds that under the plain terms of the Guaranty, defendant Parrish has waived any defenses to liability other than discharge by payment in full. The Court therefore discusses the affirmative defenses only with respect to defendant El Tovar.

1. *Legal Standard*

Rule 8(c) of the Federal Rules of Civil Procedures governs affirmative defenses.  The term "affirmative defense" is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true."  Black's Law Dictionary 430 (7th ed. 1999).  "Affirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief."  2 James Wm. Moore, et al., Moore's Federal Practice § 8.08[1] (3d ed. 2013).

There is no "requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  PNC as the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue."  Hartnagel v Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323).  Once PNC has met its burden under Rule 56(c), El Tovar has the affirmative burden to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If El Tovar fails to make a showing sufficient to establish the existence of an essential element of its case on which it will bear the burden of proof at trial, then Rule 56(c) "mandates the entry of summary judgment" against it.  Celotex, 477 U.S. at 322, 323.

El Tovar bears the burden of proof with respect to its affirmative defenses.  See Lackawanna Chapter of Ry. & Locomotive Hist. Soc'y v. St. Louis County, Mo., 606 F.3d 886, 888 (8th Cir. 2010), E.E.O.C. v. Wal-Mart Stores, Inc., 477 F.3d 561, 572 (8th Cir. 2007).  "A party resisting summary judgment cannot expect to rely on the bare assertions or mere cataloguing of affirmative defenses."  Residential Funding Co. v. Terrace Mortg. Co., 850 F.Supp.2d 961, 964 (D. Minn. 2012) (quoted case omitted), aff'd, 725 F.3d 910 (8th Cir. 2013).  Where a non-movant has alleged

affirmative defenses but has not filed a summary judgment motion on those defenses, it "nevertheless must still come forward with evidence to support its affirmative defenses in opposition to the movant's motion." Id. (brackets, quotation marks and quoted case omitted). See also Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004) ("The specificity requirement of Rule 56 applies with equal force where the defendant resists summary judgment, especially where the defendant resists by asserting affirmative defenses which it has a burden to prove."); Crotty v. Dakotacare Admin. Servs., Inc., 455 F.3d 828, 831 (8th Cir. 2006) ("When a party . . . has the burden of proof on an issue, it must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion.").

El Tovar therefore has "an affirmative burden to identify specific facts in the record showing its defenses raise[] a triable issue against its liability." Midwest Oilseeds, 387 F.3d at 714. "[O]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense." Residential Funding, 850 F.Supp.2d at 965 (quoted case omitted).

### 2. *Affirmative Defenses at Issue*

The Defendants' First Amended Answer asserts the following affirmative defenses:

A.      Defendants deny each and every allegation contained in Plaintiff's Petition [*sic*] not expressly admitted.

B.      Plaintiff has failed to state a cause of action upon which relief can be granted.

C.      Plaintiff has failed to mitigated its damages; therefore Plaintiff's alleged damages, if any, should be reduced proportionately.

D.     Plaintiff's claims are barred by the statute of frauds, appropriate statute of limitations, statute of repose and/or laches.

E.     Plaintiff is not the true party in interest.

F.     Plaintiff has failed to enjoin [*sic*] persons or parties needed for the just adjudication of its claims.

G.     Plaintiff's claims are barred by the equitable doctrines of waiver, unclean hands and estoppel.

H.     The contracts entered into by, between and among National City Bank, El Tovar Incorporated and Steven Parrish contain a material, mutual mistake and are therefore unenforceable in whole or in part.

I.     Each and every contract to which PNC, El Tovar Incorporated and Steven Parrish are a party to [*sic*] is a contract of adhesion and therefore unenforceable, in whole or in part.

First Amended Answer & Counterclaims at 8-9 (Doc. 29).

El Tovar states in its opposition memorandum that it waives affirmative defenses labeled B., E., F. and H., so the Court does not address these defenses.[2]  The Court now turns to the remaining affirmative defenses C., D., G. and I.

>    a.  *Failure to Mitigate Damages, Laches, Waiver, Estoppel and Unclean Hands - Affirmative Defenses C., D., and G.*

PNC moves for summary judgment on El Tovar's affirmative defenses of failure to mitigate damages, laches, waiver, estoppel and unclean hands, asserting these defenses are barred by the Missouri Credit Agreement Statute, Mo. Rev. Stat. § 432.047 (2000), which prohibits a party from maintaining any action or defense, regardless of legal theory, that is in any way related to a credit

---

[2]     Defendants' Paragraph A does not assert an affirmative defense, as it merely states that El Tovar denies each allegation contained in the complaint that is not admitted.  The Court therefore does not discuss Paragraph A further.  In addition, El Tovar's opposition does not address its affirmative defenses of the statute of limitations, statute of frauds and statute of repose and, accordingly, these defenses as listed in Paragraph D. are waived.

agreement unless the credit agreement is in writing.  PNC argues that to the extent El Tovar's defenses are that it secured refinancing in an amount PNC "agreed to accept," or that PNC agreed to "cooperate and provide the necessary information and documents," these defenses are barred by the statute.

El Tovar's opposition generally asserts that PNC acted in bad faith, and its arguments can be summarized as follows: (1) after El Tovar was in default, PNC agreed to but then failed to cooperate to assist El Tovar in obtaining replacement financing from another bank so that El Tovar could pay its debt to PNC; (2) has PNC over-litigated this case and expended unnecessary attorneys' fees, which in turn incur additional interest, and conducted excessive appraisals and environmental inspections of the Properties, in order to add these to the obligation owed by El Tovar; and (3) PNC could have avoided this litigation if it had simply liquidated the collateral by foreclosure.

The Missouri Credit Agreement Statute "acts as a statute of frauds to protect banks from losing their right to enforce a loan according to the terms of the written loan documents, if they informally attempt to accommodate debtors."  U.S. Bank Nat'l Ass'n v. Canny, 2011 WL 226965, at *2 (E.D. Mo. Jan. 24, 2011).  "Section 432.047 of the statute bars claims by debtors against lenders based on oral promises to modify commercial credit agreements."  Id.  The statute provides:

> 1.  For the purposes of this section, the term "credit agreement" means an agreement to lend or forbear repayment of money, to otherwise extend credit, or to make any other financial accommodation.
>
> 2.  A debtor may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or for other consideration, and sets forth the relevant terms and conditions.
>
> . . . .

3. (2)  Notwithstanding any other law to the contrary in this chapter, the provisions of this section shall apply to commercial credit agreements only and shall not apply to credit agreements for personal, family, or household purposes.

4.  Nothing contained in this section shall affect the enforceability by a creditor of any promissory note, guaranty, security agreement, deed of trust, mortgage, or other instrument, agreement, or document evidencing or creating an obligation for the payment of money or other financial accommodation, lien, or security interest.

Mo. Rev. Stat. § 432.047.[3]

The statute's language is broad and "demonstrates the legislature's intent to eliminate all claims and defenses relating to a credit agreement if that credit agreement is not in writing." BancorpSouth Bank v. Paramont Properties, L.L.C., 349 S.W.3d 363, 367-68 (Mo. Ct. App. 2011). Courts interpreting the Credit Agreement Statute "have consistently held that the statute bars all claims and defenses in any way related to a credit agreement unless the agreement is in writing." Smithville 169 v. Citizens Bank & Trust Co., 2013 WL 434028, at *3 (W.D. Mo. Feb. 5, 2013) (citing BancorpSouth, 349 S.W.3d at 367-68 (promissory and equitable estoppel claims based on oral promises were barred by § 432.047); U.S. Bank Nat'l Ass'n, 2011 WL 226965, at *2 (tort and contract claims were barred by § 432.047)).  The statute has also been held to bar claims of negligent and fraudulent misrepresentation.  See Wivell v. Wells Fargo Bank, N.A., 2013 WL 3665529, at **7-8 (W.D. Mo. July 12, 2013) (negligent misrepresentation); Union Bank v. Murphy, 2012 WL 4404372, at *7 (W.D. Mo. Sept.24, 2012) (fraudulent misrepresentation).

The assertions that underlie El Tovar's affirmative defenses – that PNC agreed to accept refinancing, or agreed to cooperate and provide information to aid El Tovar in obtaining refinancing – concern a credit agreement as that term is defined by § 432.047.1.  The Parrish Affidavit, which

---

[3]   The statute provides that it does not apply unless the contract includes the specific language set out in § 432.047.3(1).  The statutory language appears at the bottom of page 2 of the Note in this case, in ten-point boldface type.

is the only evidence offered by El Tovar, does not allege that El Tovar or Parrish came to any other agreement with PNC in writing. All of El Tovar's conclusory and self-serving allegations rely on oral agreements or commitments it asserts PNC made concerning PNC's willingness to assist it in obtaining alternative financing after the Note matured. El Tovar offers no evidence of a written agreement by PNC to forbear from exercising its rights and remedies under the matured loan, to release information to St. John's Bank, or to pursue the remedy of foreclosure as opposed to other remedies available under the loan documents. As a result, Section 432.047 bars El Tovar's affirmative defenses of failure to mitigate (Paragraph C.), laches (Paragraph D.), waiver, estoppel and unclean hands (Paragraph G). Defendants therefore cannot avoid summary judgment by their claim of these affirmative defenses.

In addition, El Tovar's arguments fail on their merits even if they were not barred by the Missouri Credit Agreement Statute. As to the first argument, El Tovar points to no contractual obligation or legal duty on PNC's part to assist it in obtaining replacement or alternative financing upon maturity the Note. See, e.g., Frame v. Boatmen's Bank of Concord Village, 824 S.W.2d 491, 494 (Mo. Ct. App. 1992) (no confidential or fiduciary relationship exists between a bank and a customer borrowing funds). El Tovar's argument would add terms to the Note that the parties had not included, and the Court will not rewrite the parties' agreement. Cf. Centerre Bank of Kansas City, N.A. v. Distributors, Inc., 705 S.W.2d 42, 48 (Mo. Ct. App. 1985) (court would not rewrite agreement to add term that demand for payment under demand note could only be made in good faith).

As to the second argument, El Tovar admits the loan documents provide that PNC is entitled to recover its attorneys' fees in the event of default, and admits it is in default. El Tovar's argument that PNC is not entitled to attorneys' fees expended in defending the Counterclaims is not a defense

to liability but rather concerns the reasonableness of PNC's attorneys' fees, which is a matter of law for determination by the Court. See Campbell v. Kelley, 719 S.W.2d 769, 772 (Mo. 1986) (en banc) (where note provides for award of attorney's fees and plaintiff presents evidence of the amount of the fees, the "court, as an expert on attorney's fees, may award reasonable amounts as a matter of law.").

Finally, El Tovar offers no legal or factual support for its argument that PNC's decision to file this action and seek a money judgment against it, instead of exercising its right to foreclose on the Property, somehow raises a genuine issue of material fact for trial. El Tovar does not point to any contractual language or substantive legal authority that would require PNC to enforce the collateral security prior to seeking a judgment against it. PNC has no duty to enforce its rights under the loan documents in a manner that is preferable to El Tovar.

For these reasons, the Court concludes that El Tovar has failed to meet its burden to identify specific facts in the record showing that its affirmative defenses of failure to mitigate damages, laches, estoppel, waiver or unclean hands raise a triable issue against its liability. PNC's motion for summary judgment should therefore be granted on these defenses.

b. *Contracts of Adhesion -Affirmative Defense I.*

El Tovar's final affirmative defense is that the loan documents are contracts of adhesion. Under Missouri law, "A contract of adhesion, as opposed to a negotiated contract, is a form contract that is created and imposed by the party with greater bargaining power." State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 857 (Mo. 2006) (en banc) (cited case omitted). Under such a contract, "The 'stronger party' has more bargaining power than the 'weaker party,' often because the 'weaker party' is unable to look elsewhere for more attractive contracts." Id. (citations omitted). "The 'stronger party' offers the contract on a 'take this or nothing' basis. The terms in the contract are

imposed on the weaker party and 'unexpectedly or unconscionably limit the obligations and liability of the [stronger party].'" Id. (internal citation and quoted case omitted).

PNC asserts it is entitled to summary judgment because there is no evidence the loan documents are contracts of adhesion, as Defendants could have always selected a different lender. PNC argues that El Tovar fails to identify any unconscionable provisions in the loan documents, and disregards the fact Defendants had nearly six years from the inception of the loan in April 2007 until March 2013 to locate a lender with more favorable loan terms. PNC also argues that Defendant Parrish is a sophisticated borrower, as he is an attorney and has claimed in these proceedings to be a former banker and an owner of thirty apartment units.

El Tovar responds that both the Note and Guaranty are contracts of adhesion because the Defendants are a "small Missouri corporation and an individual," while PNC is a "large, sophisticated corporate bank." Defs.' Mem. Opp. at 6. El Tovar states that both documents were forms and makes the conclusory assertion that "Defendants had limited bargaining power, and were under duress to execute the documents." Id.

The mere assertion that a pre-printed contract is a contract of adhesion is inadequate to raise a genuine issue of material fact on this defense. See State ex. rel Vincent, 194 S.W.3d at 857-58. El Tovar has offered no evidence that the Note or Guaranty were contracts of adhesion. El Tovar makes no attempt to offer proof that the loan documents were imposed on it, were offered on a "take it or leave it" basis, or that Defendants were unable to look elsewhere for more attractive loan terms when the loan was originated by PNC's predecessor in interest in April 2007, or at any time thereafter. El Tovar also offers no evidence that the loan documents "unexpectedly or unconscionably limit" PNC's obligations or liability.

For these reasons, the Court concludes that El Tovar has failed to identify specific facts in the record showing that its affirmative defense of adhesion raises a triable issue against its liability, and PNC is entitled to summary judgment on this affirmative defense.

C. Defendants' Counterclaims

The Court now turns to PNC's motion for summary judgment on Defendants' two remaining Counterclaims.

1. *Recovery of Attorneys' Fees for Defense of Counterclaims - Count I*

In Count I of the Counterclaim, Defendants acknowledge that the Note, Deed of Trust and Assignment of Rents include provisions entitling PNC to its reasonable attorneys' fees in the event of default. Defendants admit the existence of a default. Count I seeks a declaration that "PNC is prohibited as a matter of law from attempting to collect fees attributable to PNC's defense of Defendants' counterclaims" and that "PNC should be required to account separately for attorneys' fees incurred in pursuit of its claims and those attorneys' fees incurred in the defense of Defendants' counterclaims." Counterclaim at 11.

PNC moves for summary judgment, arguing that under Missouri law and the contract language, it is entitled to all of its reasonable attorneys' fees; that it is not appropriate for Defendants to assert a declaratory judgment as a counterclaim; and that the Court should grant summary judgment on Counts I and II of the Complaint and then determine the reasonableness of the attorneys' fees and expenses incurred by PNC, as presented in a post-judgment motion.

In opposition, Defendants argue that because the loan documents include attorneys' fee provisions, this "creates a situation where neither [PNC] nor its counsel is motivated to resolve the situation without litigation." Defs.' Mem. Opp. at 8. Defendants' opposition does not attempt to support the claim actually asserted in Count I of the Counterclaim: that PNC cannot recover its

reasonable attorneys' fees under the contractual provisions to the extent those fees were incurred in defending the Defendants' Counterclaims. Defendants do not cite any legal authority to support the proposition.

In reply, PNC states that the reasonableness of its attorneys' fees is a matter of law to be decided by the Court, citing Carondelet Savings & Loan Ass'n v. Boyer, 595 S.W.2d 744, 748 (Mo. Ct. App. 1980), and that even if Defendants were to challenge the reasonableness of PNC's fees by affidavit – which they have not done – this would not raise a genuine issue of fact precluding summary judgment, citing American Bank of Princeton v. Stiles, 731 S.W.2d 332, 339 (Mo. Ct. App. 1987) (because the reasonableness of attorneys' fees is a matter of law, affidavit challenging reasonableness could not preclude summary judgment). PNC contends that based on the record as developed on summary judgment, it is proper for Court to grant judgment in its favor on Counts I and II of the Complaint and against Defendants on Count I of the Counterclaim, and PNC will then submit its motion for attorneys' fees in accordance with Local Rules 8.02 and 8.03 following the entry of judgment.

As a threshold matter, the Court cannot agree with PNC's categorical assertion that it is improper for a defendant to assert a declaratory judgment counterclaim. See, e.g., 13 James Wm. Moore, et al., Moore's Federal Practice § 13.41 (3d ed. 2013) ("A counterclaim may request declaratory relief if the requirements for pleading the existence of a 'case or controversy' between the parties are otherwise met."). PNC is correct, however, that the issues raised by Count I of Defendants' Counterclaim are properly resolved by the Court as a matter of law in connection with its resolution of Counts I and II of the Complaint.

"When [a counterclaim] for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim," courts often

exercise their discretion to dismiss the counterclaim "on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for a declaratory judgment moot." 6 Charles A. Wright, et al., Federal Practice and Procedure § 1406 (3d ed. 1998). "When deciding whether to dismiss a counterclaim as redundant, courts consider whether the declaratory judgment serves a useful purpose." Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC, 871 F.Supp.2d 843, 862 (D. Minn. 2012) (quoted case omitted). "Such an analysis requires consideration of whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." Id. (internal quotation marks and quoted case omitted).

Here, paragraphs 20 and 27 of the Complaint assert that the terms of the Note and Guaranty require El Tovar and Parrish to pay PNC's costs and expenses, including attorneys' fees, incurred in connection with their enforcement. In their Answer to paragraphs 20 and 27, Defendants state that the Note and Guaranty Speak for themselves and to the extent PNC's "allegations . . . are consistent with the [Note and Guaranty], they are admitted" but are denied "[e]xcept as so expressly admitted[.]" First Amended Answer, ¶¶ 20, 27. As discussed above, Defendants' Answer asserted the affirmative defense of failure to mitigate damages, relating to PNC's attorneys' fees.

The Court has concluded that summary judgment should be granted in favor of PNC on Counts I and II of its Complaint. El Tovar's argument that PNC is not entitled to attorneys' fees expended in defending the Counterclaims is neither a defense to its liability nor an affirmative claim for relief; instead, the argument goes to the reasonableness of PNC's attorneys' fees, which are at issue pursuant to Counts I and II of the Complaint.

The reasonableness of a claim for attorneys' fees is a matter of law for determination by the Court. See Campbell, 719 S.W.2d at 772. Defendants may achieve the relief they seek in Count I

of the Counterclaim by successfully challenging the reasonableness of PNC's claim for attorneys' fees as asserted by a post-judgment motion for fees. Under these circumstances, the Court concludes that Count I of the Counterclaim is redundant and should be dismissed as such. See Hardee's Food Sys., Inc. v. Hallbeck, 776 F.Supp.2d 949, 954 (E.D. Mo. 2011). PNC's motion for summary judgment, construed as a motion to dismiss, should be granted as to Count I of the Counterclaim.

### 2. *Breach of the Covenant of Good Faith and Fair Dealing - Count III*

In Count III of the Counterclaim, Defendants assert that PNC breached the implied covenant of good faith and fair dealing in the loan documents based on the following actions:

(a) Ordering one or more appraisals at Defendants' expense and then treating the appraisals as superfluous.

(b) Ordering a Phase 1 Environment Inspection on a property that was reasonably expected to be refinanced by Defendants; and, therefore rendering any such report a virtually [*sic*] nullity.

(c) Paying an excessive fee for the Phase 1 Environment inspections.

(d) Refusing to release from its collateral a property valued by PNC's own appraisers at $160,000 in exchange for (1) payment in full of all outstanding real estate taxes and MSD sewer service charges on all PNC-related collateral; and (2) $160,000 cash.

(e) Forcing Defendant El Tovar to continue paying 2.74% more in interest on principal of $160,000 because PNC refused to release the four-family in favor of St. Johns Bank.

(f) Demanding that Defendants reimburse PNC for an unnecessary environmental report on the one property that Defendants and St. Johns Bank were ready, willing and able to refinance.

(g) Refusing to allow Defendant EL Tovar to refinance the Cleveland property for an amount equal to PNC's appraised value of the property.

(h) Attempting to thwart Defendant El Tovar's statutory right to redeem its property following a foreclosure sale, but asking this Court to invoke its equitable powers to liquidate the Property via a private sale.

(i) Allowing the lapse of a financing commitment from St. Johns Bank, notwithstanding the fact that St. Johns Bank had expressed an interest in refinancing the entire loan balance.

First Amended Answer & Counterclaims at 14-15.

PNC moves for summary judgment, asserting that Count III is based on wished-for legal duties that cannot create the basis for a breach of the implied covenant of good faith and fair dealing under Missouri law. PNC asserts that while it had an obligation to act in good faith and deal fairly in enforcing the terms of its contracts with the Defendants, this obligation cannot "give rise to new obligations not otherwise contained in a contract's express terms," <u>Comprehensive Care Corp. v. RehabCare Corp.</u>, 98 F.3d 1063, 1066 (8th Cir. 1996) (citing <u>Glass v. Mancuso</u>, 444 S.W.2d 467, 478 (Mo. 1969)), or "override the express terms of the agreement[.]" <u>Taylor Equip., Inc. v. John Deere Co.</u>, 98 F.3d 1028, 1032 (8th Cir. 1996).

PNC states that all of the actions Defendants complain of in Count III took place following maturity of the loan, and that it is undisputed Defendants failed to pay real estate taxes on the properties for several years, failed to permit inspections provided for in the loan documents, and permitted one property to be condemned by the City of St. Louis. PNC argues that Count III not only asserts that the Court should ignore contractual rights and remedies provided under the terms of the loan documents, but also asks the Court to find that PNC's acts taken in accordance with those rights violate the implied covenant of good faith and fair dealing.

In response, Defendants assert that after the Note matured, PNC demanded payment and they made arrangements through alternative financing to pay the Note, but PNC "then demonstrated bad faith by 'lack of diligence and slacking off,' which caused Defendants to lose the alternative financing." Defs.' Mem. Opp at 8. Defendants assert that PNC's "behavior evaded the spirit of the bargain and demonstrates an interference with or failure to cooperate in the other party's

25

performance." Id.  Defendants argue that the motive for PNC's bad faith was to accumulate attorneys' fees under the provisions in the loan documents and add those to Defendants' obligation. Id. at 8-9.  Defendants also assert that PNC's filing of this action was bad faith, because PNC has a power of sale and could have simply foreclosed on the Property, id. at 9, and that PNC in bad faith obtained two appraisals and environmental inspections on each property and assessed those costs against the Defendants to "increase the costs to Defendants and prevent Defendants from reclaiming the property or recouping some of the equity in said property."  Id. at 9-10.

PNC replies that the clear and unequivocal language of the loan documents permits it to file suit, secure the appointment of a receiver, obtain appraisals and conduct environmental testing.  PNC further replies that there are no provisions in the loan documents or any other written agreement that require it to foreclose on the Deed of Trust, to release collateral in exchange for partial satisfaction of indebtedness, to disseminate proprietary information to a prospective refinancing lender, or to forbear from enforcing its legal remedies in the face of a loan with numerous defaults aside from passage of the maturity date and deteriorating collateral, so that an "interested lender" could consider refinancing the indebtedness.  PNC states that Defendants' claims ignore the principle that the obligation to act in good faith cannot give rise to new obligations that are not contained in the loan documents or override the terms of those documents.  PNC also argues that to the extent Count III is based on PNC's alleged bad faith in connection with Defendants' attempt to obtain alternative financing, it is also barred by the Missouri Credit Agreement Statute.

Under Missouri law, a claim for breach of the covenant of good faith and fair dealing is a contractual claim.  Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 413 (Mo. Ct. App. 2000). Missouri law implies a covenant of good faith and fair dealing in every contract.  Farmers' Elec. Co-op., Inc. v. Missouri Dep't of Corr., 977 S.W.2d 266, 271 (Mo. 1998) (en banc).  "The good faith

obligation requires the contracting parties not to prevent or hinder performance of the contract by either party." <u>Reitz v. Nationstar Mortg., LLC</u>, __ F.Supp.3d __, 2013 WL 3282875, at *17 (E.D. Mo. June 27, 2013) (citing <u>Finova Cap. Corp. v. Ream</u>, 230 S.W.3d 35, 45 (Mo. Ct. App. 2007)).

The good faith requirement also "extends to the manner in which a party employs discretion conferred by a contract." <u>BJC Health Sys. v. Columbia Cas. Co.</u>, 478 F.3d 908, 914 (8th Cir. 2007) (applying Missouri law; citing <u>Missouri Consol. Health Care Plan v. Community Health Plan</u>, 81 S.W.3d 34, 45 (Mo. Ct. App. 2002)). "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'" <u>Cordry v. Vanderbilt Mortg. & Fin., Inc.</u>, 445 F.3d 1106, 1112 (8th Cir. 2006) (quoting <u>Missouri Consol. Health Care Plan</u>, 81 S.W.3d at 46). "When a decision is left to the discretion of one party, the question is not whether the party made an erroneous decision but whether the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion." <u>Missouri Consol. Health Care Plan</u>, 81 S.W.3d at 48.

The implied covenant of good faith and fair dealing is "not a general reasonableness requirement." <u>Schell v. LifeMark Hosps. of Mo.</u>, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002). It is also not "an overflowing cornucopia of wished-for legal duties," <u>id.</u> (quoting <u>Comprehensive Care.</u>, 98 F.3d at 1066), but instead is "only an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." <u>Schell</u>, 92 S.W.3d at 230 (cited case omitted). Because the duty of good faith is not a duty of candor, "hard bargaining is not *per se* bad faith" and although it is "phrased in moralistic overtones, good faith does not import into contract law the

negligence principles of tort law." Id. "The party claiming breach of the implied covenant of good faith must present substantial evidence that it has been violated." Id.

To the extent Defendants assert claims in Count III that PNC acted in bad faith in connection with their attempts to obtain alternative financing after the Note matured, Defendants do not assert or present any evidence that PNC made any promises in writing or that it breached the written loan documents. As a result, the Missouri Credit Agreement bars those claims. Cf. U.S. Bank Nat'l Ass'n, 2011 WL 226965, at *2 (dismissing counterclaim for breach of the implied covenant of good faith and fair dealing based on oral promises).

To the extent Defendants allege that PNC acted in bad faith in carrying out its rights under the loan documents (i.e., by filing suit instead of foreclosing, obtaining appraisals and environmental assessments and assessing those expenses and its attorneys' fees incurred following default against Defendants), the Court finds that Defendants have failed to come forward with any evidence, as opposed to the conclusory allegations of their pleading, to raise a genuine issue of fact for trial as to whether any of PNC's actions constitute bad faith, as opposed to the good-faith exercise of its business judgment. As stated above, a party asserting breach of the implied covenant of good faith must present substantial evidence that the offending party acted in bad faith or engaged in unfair dealing. Schell, 92 S.W.3d at 230. Defendants herein have not done so.

Defendants offer no evidence or citation to any substantive legal authority tending to establish that it was arbitrary, opportunistic, exploitive or otherwise in bad faith for PNC to exercise the rights permitted it by express provisions of the loan documents upon default by the Defendants. This is particularly true where Defendants admit they allowed the Property to become subject to real estate tax and sewer liens that took priority over PNC's security interest and allowed one property to be condemned, all in violation of the terms of the loan documents. Defendants thus fail to create

a genuine issue of material fact on the elements of their claim for breach of the implied covenant of good faith and fair dealing, to the extent it is not barred by the Missouri Credit Agreement Statute. PNC's motion for summary judgment on Count III of the Counterclaim should therefore be granted.

## V.  Conclusion

For the foregoing reasons, PNC's motion for summary judgment should be granted on Counts I and II of the Complaint, on Defendants' affirmative defenses, and on Counts I, II and III of the Counterclaim.  Judgment will be entered in favor of PNC and against the Defendants in the principal sum of $492,528.04, together with advances for real estate taxes of $11,696.23 and $12,022.65, advances for MSD liens of $9,690.01, environmental site assessments at a cost of $5,071.00, appraisals at a cost of $5,876.00, late fees of $26,048.02, and interest through the date of judgment, February 11, 2014, of $37,969.03.  The sums advanced by PNC for real estate taxes, MSD liens and environment site assessments may be added to the principal amount of the loan. Therefore, PNC's damages, exclusive of attorneys' fees, are in the principal sum of $531,007.93, together with interest of $37,969.03, late fees of $26,048.02, and appraisal fees of $5,876.00.  PNC may submit its motion for attorneys' fees within the time allowed by Local Rule 8.02.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff PNC Bank, National Association's Motion for Summary Judgment is **GRANTED**.  [Doc. 84]

**IT IS FURTHER ORDERED** that plaintiff PNC Bank, National Association's Motions to Dismiss Defendants' Counterclaims and to Strike Affirmative Defenses are **DENIED as moot**. [Docs. 31, 38]

An appropriate judgment will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  11th  day of February, 2014.