**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:13-CV-1073 CAS |
| v. | ) | |
| | ) | |
| EL TOVAR, INCORPORATED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants El Tovar Incorporated and Steven D. Parrish's

(collectively "Defendants") Motion to Modify the Court Order of December 5, 2013. Plaintiff PNC

Bank, National Association ("PNC") opposes the motion. Defendants did not file a reply and the

time to do so has passed, so the motion is ready for decision. For the following reasons, the motion

will be construed as a motion under Rule 60(b) of the Federal Rules of Civil Procedure and denied.

**Background**

This is an action on a promissory note and personal guaranty. On October 31, 2013, the

parties filed a Joint Motion for Modification of the Case Management Order which stated in part that

the parties had engaged in a mediation on October 30, 2013 that resulted in the parties' agreement

to a Consent Order for Appointment of Receiver (Doc. 58). On November 4, 2013, the Court issued

the Consent Order for Appointment of Receiver and appointed SH Equities, LLC as receiver for the

real property owned by Defendants and commonly referred to as 1853 S. Spring Avenue, 3803 Shaw

Avenue, and 4426-28 Cleveland Avenue, St. Louis, Missouri.

On November 25, 2013, PNC filed a motion for an order to show cause why the Defendants

should not be held in contempt of Court for failure to comply with the Consent Order for

Appointment of Receiver. PNC asserted in its motion that Defendants failed to comply with the

Consent Order for Appointment of Receiver in the following respects, among others:

> El Tovar and Parrish were required to turn over any and all records and information
> it or they have concerning the Collateral [¶13 of the Receiver Order] and turn over
> all sums related to or pertaining to, or derived from the Collateral [¶14 of the
> Receiver Order]. The Receiver has requested and did not receive the following: (a)
> November rents; (b) security deposits; (c) information on the code violations and
> condemnation notices from the City; (d) information on the pending housing court
> actions with respect to the Shaw Property; (e) operating & trust account bank
> statements & account information; (f) operating expense data; (g) occupancy permits
> (h) maintenance records (this is important because recent repairs were made to the
> HVAC units and the Receiver wants to be certain the work was completed, done
> properly by a certified and insured HVAC technician or electrician and the proper
> permits were issued for the work and inspected); (i) tenant correspondence (tenants
> have open work orders that need to be addressed which Parrish did not begin or
> complete, tenants moving out or lease renewals that need to executed); and (j)
> permits for recent work performed.

PNC's Mot. for Order to Show Cause at 3-4 (Doc. 64). PNC's motion was supported by an affidavit

of the Receiver.

Following an evidentiary hearing on December 5, 2013, at which Mr. Shawn Henry testified

for the Receiver and defendant Parrish testified, the Court granted PNC's motion for order to show

cause and issued an Order finding that

> the defendants violated the Consent Order Appointing Receiver by failing to turn
> over to the Receiver all sums under their possession or control as of the date of the
> Consent Order Appointing Receiver or thereafter, <u>representing</u> November 2013 rents
> and security deposits for the real properties at issue, in the amount of Eleven
> Thousand Four Hundred Ninety-Two Dollars and Seventy-Two Cents ($11,492.72).

Memorandum and Order of December 5, 2013 at 1-2 (Doc. 80) (the "Order") (emphasis added).

Defendants' motion to modify asserts that the Order was "factually and materially in error,

and unsupported by the evidence adduced at the hearing." Defs.' Mot. to Modify at 2-3. Defendants

assert there was no evidence indicating that either defendant had collected any rents for the month

of November 2013, and that defendant Parrish testified Defendants did not receive any rents for that

month. Defendants contend that as a result of the Order, the Receiver now holds the security

deposits attributable to all of El Tovar's tenants, not just the deposits attributable to the properties

controlled by the Receiver pursuant to the Consent Order for Appointment of Receiver. Defendants

contend that unless the Order is modified to distinguish between deposits attributable to PNC's

collateral and deposits belonging to El Tovar's other tenants, "an injustice will befall these innocent,

third-parties[.]" Defs.' Mot. to Modify at 2 (Doc. 92). Defendants contend that $6,470.72 of the

funds ordered turned over to PNC represent security deposits attributable to twenty-four tenants

living in other properties that are not part of the receivership. Id. at 3-4. Defendants also assert that

the Receiver is "prohibited from holding any of the funds belonging to Defendants and/or their

tenants" because it has not posted bond. Id. at 4. Defendants' motion is supported by the Affidavit

of Steven D. Parrish.

**Legal Standard**

Defendants do not indicate the procedural basis for their motion to modify the Order.

Because the Federal Rules of Civil Procedure do not mention or account for "motions to modify,"

and the Order to which Defendants' motion is directed is a non-final order, the Court finds that

Defendants' motion should be construed as a motion pursuant to Rule 60(b), Fed. R. Civ. P.

Compare Nelson v. American Home Assur. Co., 702 F.3d 1038, 1043 (8th Cir. 2012) ("motion to

reconsider" directed to a non-final order is considered as a Rule 60(b) motion); Monsanto Co. v. E.I.

DuPont de Nemours and Co., 2011 WL 322672, at *4 (E.D. Mo. Jan. 31, 2011) (treating motion to

modify non-final order as a Rule 60(b) motion).

Rule 60(b) relieves a party from a judgment or order on one of six specified grounds:

Mistake, inadvertence, surprise, or excusable neglect, Fed. R. Civ. P. 60(b)(1); newly-discovered

evidence that with reasonable diligence could not have been discovered in time for a Rule 59(b)

motion, Fed. R. Civ. P. 60(b)(2); fraud, misrepresentation or misconduct by an opposing party, Fed. R. Civ. P. 60(b)(3); the judgment is void, Fed. R. Civ. P. 60(b)(4); the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable, Fed. R. Civ. P. 60(b)(5); and any other reason that justifies relief, Fed. R. Civ. P. 60(b)(6).

Relief under Rule 60(b) is limited. A district court should grant a Rule 60(b) motion only upon an adequate showing of exceptional circumstances. Schwieger v. Farm Bureau Ins. Co. of Neb., 207 F.3d 480, 487 (8th Cir. 2000); Richards v. Aramark Services, Inc., 108 F.3d 925, 927 (8th Cir. 1997) (internal quotations and citations omitted). Rule 60(b) motions are viewed with disfavor and are addressed to the Court's discretion. Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 515 (8th Cir. 1984). Rule 60(b) "is not a vehicle for simple reargument on the merits." Broadway v. Norris, 193 F.3d 987, 990 (8th Cir. 1999).

**Discussion**

Defendants' motion does not seek relief based on any of the enumerated circumstances contained in any subsection of Rule 60(b), and does not on its face state grounds for relief under the Rule. Relief under Rule 60(b) is therefore not available here. See Wilson v. Runyon, 981 F.2d 987, 989 (8th Cir. 1992) (per curiam). Defendants also do not show the existence of exceptional circumstances, as their motion is an attempt to reargue the merits of their position opposing the PNC's motion for an order to show cause why they should not be held in contempt of Court. See Broadway, 193 F.3d at 990. Neither Defendants' motion nor the Parrish Affidavit is accompanied by any documentary evidence, records, bank statements or accounting detailing funds received from any tenants. Defendants make only conclusory, unsubstantiated and self-serving assertions that the

4

funds contained in the El Tovar Incorporated bank accounts are not attributable to the properties at issue here.[1]

The Court heard testimony of witnesses and argument and statements of counsel at the hearing on December 5, 2013, including that Defendants did not turn over bank records to the Receiver until the morning of the hearing, although the Consent Order for Appointment of Receiver ordered that those records be turned over within ten (10) days of November 4, 2013. Consent Order at 6, ¶ 13 (Doc. 58). The Consent Order also required Defendants to turns over to the Receiver within five (5) days of November 4, 2013,

> all sums in existence on the date hereof, or which later come under their possession or control, that are related to or pertaining to, or derived from the Collateral, including, but not limited to (a) all cash on hand, (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instrument), and (c) all sums held in accounts at any financial institutions (including, but not limited to, (i) tenant/lessee security deposits, (ii) deposits held in escrow for any purpose, such as the payment of real or collateral taxes and insurance premiums, (iii) proceeds of insurance that are maintained on or would pertain to the Collateral, (iv) rent and prepaid rent, (v) funds designated or intended for capital improvements, repairs, renovations to, or in connection with, the Collateral, and (vi) all other sums of any kind relating to the use, enjoyment, possession, improvement or occupancy of all or any portion of the Collateral. Any Collateral received by El Tovar, Parrish or their members, owners, officers, directors, agents, representatives or employees shall be held in trust for the receivership and immediately turned over to the Receiver with all necessary endorsements.

Consent Order for Appointment of Receiver at 7, ¶ 14.

The Court was informed by PNC's counsel that PNC instituted its Assignment of Rents on October 16, 2013, but on October 22, 2013, defendant Parrish unilaterally entered into agreements with his tenants allowing them to use their security deposits to set off against their November 2013

---

[1]In connection with its review of Defendants' motion, the Court asked the Court reporter to prepare a rough-draft transcript of the December 5, 2013 hearing. The Court will cite to that transcript in this order but it will not be made a part of the Court file.

rent, because Parrish had never escrowed the security deposits and, further, that Parrish participated in the mediation on October 30, 2013, knowing the terms of the then-proposed Consent Order for Appointment of Receiver, but did not disclose that he had allowed the tenants to forego paying November rent. As a result of Parrish's actions, he was unable to turn over to the Receiver, as ordered in the Consent Order, the November rents and tenant security deposits, except the security deposit for one tenant who paid her November rent to the Receiver.

The Receiver testified that Defendants did not have and thus could not turn over to the Receiver traditional operating expense data such as an income statement or accounting information with lines items for utilities, repairs, real estate taxes, etc., or detailed maintenance records, but instead merely turned over a folder full of receipts from Home Depot; that Defendants provided one occupancy permit for one unit of the Cleveland Property and apparently did not have any other occupancy permits; and that two units were condemned by the City of St. Louis because of a service stair problem.

The Receiver testified that the bank account information received the morning of the hearing showed El Tovar's bank account had a balance of approximately twelve to thirteen thousand dollars as of November 4, 2013, but none of that money had been turned over to the Receiver. PNC argued that Mr. Parrish had been collecting rents from the two properties at issue since the lawsuit was filed in June 2013 and had made virtually no payments to PNC during that time, so the money on deposit in the account was properly deemed generated from the two properties, particularly as money from the account was used to pay Mr. Parrish's attorney and other banks, but not PNC, even though the rents from the properties were PNC's collateral. The Receiver testified that the monthly rental income for the two properties for October 2013 would have been a little over $11,000, so as of the October 30, 2013 mediation, there should have been $11,472.97 of October rents from those

6

properties in the bank account. PNC argued that a fair resolution would be to require the Defendants to turn over the $11,472.97 that was in the bank account on November 5, 2013 or, alternatively, to provide an accounting as to income and expenses attributable to the two properties, given the lack of payment to PNC and the collection of rents for several months, along with evidence of maintenance expenditures of only a few hundred dollars.

After a brief recess during which the parties conferred, Mr. Parrish testified that he indeed did not keep operating expense records and did not segregate tenant security deposits, but instead commingled all funds in one operating account, which covered thirty rental units, including the ten subject to the receivership. Mr. Parrish testified that when he believed he would no longer be involved with the two properties subject to the receivership, he knew he had a contingent liability for the tenants' security deposits, and so he offered to apply the security deposit to tenants' November rent.

Mr. Parrish's attorney then asked him:

Q. MR. SWEENEY: [W]e just recently had a conversation with the receiver and his attorney, and you've agreed to turn over that total sum to the receiver's account until such time no later than ten days from today, we are able to develop a formula as to what percentage of what applies to the received properties; is that correct? We just had this conversation moments ago?

A. MR. PARRISH: Yeah, that would be correct. Because, you know, obviously we have – they have ten units out of a total of a package of 30. You know, there are some units that are occupied and that were actually producing income that needs to be, you know, scared away. So yeah, that seemed to be the equitable situation under these circumstances.

MR. SWEENEY: That's all I have, Judge.
. . . .
MS. ALPER-PRESSMAN: That resolution is acceptable to the bank.

Draft Transcript at 37.

7

The Court, however, stated that if there was a "formula" for determining proper allocation of the funds in the bank account, "Mr. Parrish should have been aware of it. He didn't testify to any formula. He has not shown any reason why he's not been able to comply with the court order." Id. at 38. The Court stated it would not entertain the parties' suggested agreement. The Court then concluded that Defendants had not complied with the Consent Order for Appointment of Receiver and stated it would order Defendants to turn over the sum of $11,492.72 within ten days. The Court rejected the suggestion that Defendants be provided the option of producing records in an attempt to establish that funds in the bank account were not attributable to the properties subject to the receivership, stating:

> Inasmuch as you said you couldn't produce any records, what are you going to do, go back and recreate? It's too late to do that now. You were ordered to turn those over, you said you didn't have them. So no, that doesn't work now to try to come back up with some kind of expense account records. You said you didn't have them. So that's the testimony the Court has.

Draft Tr. at 40.

The sum Defendants were ordered to turn over corresponds to the Receiver's testimony that this was the approximate amount of one month's rental income attributable to the properties under receivership. Defendants did not present any testimony or other evidence to contradict the Receiver's testimony on this point. The Order of December 5, 2013 directed El Tovar to turn over the money in its account representing the November 2013 rents and tenant security deposits for the properties at issue. The Court did not state or find that the money in El Tovar's account actually consisted of monies collected for November 2013 rents. Defendants' first argument is without merit.

Defendants' second argument is that the Receiver "may be prohibited" from holding any funds belonging to Defendants or their tenants because the Receiver has not posted a bond. This argument is conclusory, as it is supported only by citation to several federal and state statutes and

rules of procedure, without any accompanying discussion or analysis. The Court finds that this undeveloped argument does not assert a claim for relief under any provision of Rule 60(b). In addition, the Court notes that the Consent Order for Appointment of Receiver does not provide that the Receiver will be required to post bond, and no party requested or moved that the Receiver be required to post bond.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Modify the Court Order of December 5, 2013, construed as a motion under Rule 60(b), Fed. R. Civ. P., should be denied as it fails to set forth any basis for relief under Rule 60(b) and does not make an adequate showing of exceptional circumstances.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Modify the Court Order of December 5, 2013, construed as a motion under Rule 60(b), Fed. R. Civ. P., is **DENIED**. [Doc. 92].


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this __13th__ day of February, 2014.

9