PNC BANK, NATIONAL ASSOCIATION, )
                                 )
            Plaintiff,           )
                                 )          No. 4:13-CV-1073 CAS
     v.                          )
                                 )
EL TOVAR, INCORPORATED, et al.,  )
                                 )
            Defendants.          )

## MEMORANDUM AND ORDER

This closed diversity matter is before the Court on plaintiff PNC Bank, National Association's ("PNC") Motion for Attorneys' Fees and Expenses Together with Taxable Costs, defendants El Tovar Incorporated and Steven D. Parrish's (collectively "Defendants") Motion for Rehearing, PNC's Motion to Strike the Defendants' Motion for Rehearing, and PNC's Motion for Bill of Costs. Defendants did not file an opposition to PNC's Motion for Attorneys' Fees and Expenses or a Reply in support of their Motion for Rehearing within the time permitted to do so.

On March 26, 2014, the Court ordered PNC to file a verified bill of costs in accordance with Local Rule 8.03(A). The Court stated that defendants would be given time to respond and ordered defendants to file their "specific objections, if any" by April 10, 2014. Order of March 26, 2014 (Doc. 107). Defendants did not file specific objections to the verified bill of costs, but instead filed without seeking leave of Court a "Memorandum in Opposition to the Award of Some, if Not All Attorney's Fees and Other Related Expenses" (Doc. 110). Defendants' Memorandum is an untimely opposition to PNC's Motion for Attorneys' Fees and Expenses, and does not mention any of the items of cost sought in PNC's verified bill of costs. The Court could strike defendants' Memorandum from the record as being filed without leave of Court, but will address it.

All of the motions are ready for decision. For the following reasons, the Court will deny PNC's Motion to Strike, deny defendants' Motion for Rehearing, grant in part PNC's Motion for Attorneys' Fees and Expenses, and grant in part PNC's Motion for Bill of Costs.

## I. Background

This is an action on a promissory note and personal guaranty. On October 31, 2013, the parties filed a Joint Motion for Modification of the Case Management Order which stated in part that the parties had engaged in a mediation on October 30, 2013 that resulted in the parties' agreement to a Consent Order for Appointment of Receiver (Doc. 58). On November 4, 2013, the Court issued the Consent Order for Appointment of Receiver and appointed SH Equities, LLC as receiver for the real property owned by Defendants and commonly referred to as 1853 S. Spring Avenue, 3803 Shaw Avenue, and 4426-28 Cleveland Avenue, St. Louis, Missouri.

On November 25, 2013, PNC filed a motion for an order to show cause why the Defendants should not be held in contempt of Court for failure to comply with the Consent Order for Appointment of Receiver. PNC asserted in its motion that Defendants failed to comply with the Consent Order for Appointment of Receiver in the following respects, among others:

> El Tovar and Parrish were required to turn over any and all records and information it or they have concerning the Collateral [¶13 of the Receiver Order] and turn over all sums related to or pertaining to, or derived from the Collateral [¶14 of the Receiver Order]. The Receiver has requested and did not receive the following: (a) November rents; (b) security deposits; (c) information on the code violations and condemnation notices from the City; (d) information on the pending housing court actions with respect to the Shaw Property; (e) operating & trust account bank statements & account information; (f) operating expense data; (g) occupancy permits (h) maintenance records (this is important because recent repairs were made to the HVAC units and the Receiver wants to be certain the work was completed, done properly by a certified and insured HVAC technician or electrician and the proper permits were issued for the work and inspected); (i) tenant correspondence (tenants have open work orders that need to be addressed which Parrish did not begin or complete, tenants moving out or lease renewals that need to executed); and (j) permits for recent work performed.

PNC's Mot. for Order to Show Cause at 3-4 (Doc. 64). PNC's motion was supported by the Receiver's affidavit.

Following an evidentiary hearing on December 5, 2013, at which Mr. Shawn Henry testified for the Receiver and defendant Parrish testified, the Court granted PNC's motion for order to show cause and issued an Order finding that

> the defendants violated the Consent Order Appointing Receiver by failing to turn over to the Receiver all sums under their possession or control as of the date of the Consent Order Appointing Receiver or thereafter, representing November 2013 rents and security deposits for the real properties at issue, in the amount of Eleven Thousand Four Hundred Ninety-Two Dollars and Seventy-Two Cents ($11,492.72).

Memorandum and Order of December 5, 2013 at 1-2 (Doc. 80).[1]

PNC filed a motion for summary judgment which was granted by Memorandum and Order of February 11, 2014. See Mem. and Order of Feb. 11, 2014 (Doc. 99). The Court entered judgment in favor of PNC and against the defendants, jointly and severally, in the total amount of $600,900.98, dismissed Counts I and II of defendants' Counterclaims with prejudice, and assessed costs against the defendants, jointly and severally. See Judgment and Order of Dismissal (Doc. 100).

PNC timely filed its Motion for Attorneys' Fees and Expenses on February 21, 2014. Defendants did not respond directly to PNC's Motion for Attorneys' Fees and Expenses, but instead filed a Motion for Rehearing that PNC, in turn, moved to strike. As stated above, defendants filed an untimely opposition to the Motion for Attorneys' Fees and Expenses, instead of responding to PNC's verified motion for bill of costs.

---

[1]Defendants filed a Motion to Modify the Order of December 5, 2013, which the Court construed as a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and denied. See Mem. and Order of February 13, 2014 (Doc. 102).

## II. PNC's Motion to Strike and Defendants' Motion for Rehearing

Defendants do not indicate the procedural basis of their motion for rehearing. In the motion, defendants argue that in the Memorandum and Order of February 11, 2014 granting PNC's motion for summary judgment, the Court (1) "did not consider Defendants [*sic*] detrimental reliance on the Settlement Agreements reached on or about October 4, 2013 and October 30, 2013," (2) "did not credit Defendants for the monies previously paid into the registry of the Court and rent collected by the court appointed receiver," and (3) "awarded attorney fees which included the cost of Plaintiff defending various Counterclaims and Affirmative Defenses; this was not contractually agreed to and that amount should be deducted from the total amount owed." Mot. for Rehearing at 1.

PNC moves to strike the motion for rehearing, accurately stating that the motion cites no Rule, applicable statute, or case law in support. PNC argues that it should not be required to speculate as to whether defendants seek relief pursuant to Rule 59(e), Rule 60(b), or some other theory. As stated above, defendants did not file a reply in support of their motion for rehearing or respond to PNC's motion to strike it, and therefore have not clarified the procedural basis for their motion or offered legal authority to support it.

Motions to strike are properly directed only to material contained in pleadings. The Federal Rules of Civil Procedure define pleadings as "a complaint and an answer; a reply to a counterclaim . . . ; an answer to a cross claim . . . ; a third-party complaint . . . ; and a third party answer." Fed. R. Civ. P. 7(a). "Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 James W. Moore, et al., Moore's Federal Practice §12.37[2] (3rd ed. 2013). This Court has generally restricted the use of motions to strike to material contained in pleadings. See Metropolitan Cas. Ins. Co. v. Combs, 2014 WL 988452, at *2 (E.D. Mo. Mar. 13, 2014) (citing

cases). Because defendants' Motion for Rehearing is a motion and not a pleading, PNC's motion to strike it should be denied.

The Court now turns to the merits of defendants' Motion for Rehearing. Any motion that draws into question the correctness of a judgment is functionally a motion under Rule 59(e), whatever it has been titled. Norman v. Arkansas Dep't of Educ., 79 F.3d 748, 750 (8th Cir. 1996) (citations and quotation omitted). The motion questions the correctness of the judgment in this case, so the Court will construe it as a motion under Rule 59(e) to alter or amend the judgment.

A district court has broad discretion in deciding whether to grant a motion under Rule 59(e). Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998). "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." United States v. Metropolitan St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (internal quotation marks omitted). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." Id. (quoting Innovative Home Health Care, 141 F.3d at 1286)). In addition, it is improper to reargue in a Rule 59(e) motion issues that were raised in the complaint under different legal theories. Schoffstall v. Henderson, 223 F.3d 818, 827 (8th Cir. 2000).

The Court finds that defendants are unable to meet the requirements of Rule 59(e) for any of their three arguments. Defendants' first argument, that the Court "did not consider Defendants [*sic*] detrimental reliance on the Settlement Agreements reached on or about October 4, 2013 and October 30, 2013," was not raised in defendants' opposition to PNC's motion for summary judgment and therefore is not properly before the Court on the Rule 59(e) motion. Further, the Court rejected defendants' related argument raised in opposition to summary judgment: that defendants obtained

alternative financing but PNC failed to cooperate and provide necessary documentation for defendants to secure that financing.  See Mem. and Order of Feb. 11, 2014 at 10-12.  To the extent defendants' current argument is an attempt to raise its prior argument under a different legal theory, it must fail.  Further, in the Order of December 5, 2013, the Court squarely rejected defendants' argument that a settlement agreement between the parties was reached in October 2013, after hearing defendants' admission that the alleged settlement offer contained a contingency.  See Mem. and Order of Dec. 5, 2013 at 2.  Defendants' first argument thus does not establish that the judgment contains a manifest error of fact or law, and does not entitle them to relief under Rule 59(e).

Defendants' second argument, that the Court "did not credit Defendants for the monies previously paid into the registry of the Court and rent collected by the court appointed receiver," was not raised in defendants' opposition to PNC's motion for summary judgment, and therefore is not properly before the Court on a Rule 59(e) motion.  The argument also does not establish that the judgment contains a manifest error of fact.  Defendants' argument is essentially that they are entitled to a credit against the judgment.  This argument does not entitle defendants to relief under Rule 59(e).

Finally, defendants argue that the Court erred by awarding PNC "attorney fees which included the cost of Plaintiff defending various Counterclaims and Affirmative Defenses; this was not contractually agreed to and that amount should be deducted from the total amount owed."  Defendants' argument is based on an incorrect factual premise.  The Court granted PNC's motion for summary judgment, but did not award PNC a specific amount of attorneys' fees.  Instead, the Court directed PNC to file a post-judgment motion for attorneys' fees.[2]  See Mem. and Order of Feb.

---

[2]Even if the Court had awarded PNC its attorneys' fees on summary judgment, the Eighth Circuit Court of Appeals has held that Rule 59(e) is not the appropriate procedural vehicle to contest

11, 2014, at 31. In granting summary judgment, the Court stated that defendants' unsupported argument – that PNC was not entitled to attorneys' fees expended in defending the Counterclaims – was not a defense to liability or an affirmative claim for relief but instead went to the reasonableness of PNC's attorneys' fees, which are a matter of law for determination by the Court. Mem. and Order of Feb. 11, 2014, at 20-21. The Court stated, "Defendants may achieve the relief they seek in Count I of the Counterclaim by successfully challenging the reasonableness of PNC's claim for attorneys' fees as asserted by a post-judgment motion for fees." Mem. and Order of Feb. 11, 2014 at 26.

Despite this direction offered in the summary judgment order, defendants did not file a timely opposition to PNC's Motion for Attorneys' Fees and Expenses. Further, defendants' Motion for Rehearing, like their summary judgment opposition, does not cite any case law or contractual language that would limit PNC's ability to obtain reimbursement of its attorneys' fees expended in defending PNC's counterclaims. Defendants' unsupported post-judgment argument fails to establish that the Court made a manifest error of fact or law. Therefore, the third aspect of defendants' Rule 59(e) motion should also be denied.

## III. PNC's Motion for an Award of Attorneys' Fees, Expenses and Taxable Costs, and PNC's Motion for Bill of Costs

The Court now turns to PNC's post-judgment motion for attorney's fees, expenses and taxable costs.[3] The motion is supported by the affidavits of attorney Wendi Alper-Pressman and

an attorneys' fee award. Trickey v. Kaman Indus. Techs. Corp., 705 F.3d 788, 808 (8th Cir. 2013).

[3]As previously stated, the Court subsequently ordered PNC to file a verified Bill of Costs in the form prescribed by the Clerk as required by Local Rule 8.02. PNC filed its Motion for Bill of Costs on March 28, 2014. The Court will address PNC's motion for attorneys' fees and expenses and its motion for bill of costs separately.

Michael Frahlman, a PNC Bank Assistant Vice President, and detailed billings records from the law firms Lathrop & Gage, LLP and Mayer Brown, LLP. PNC seeks attorneys' fees in the amount of $57,000 and taxable costs and other expenses in the amount of $3,026.72. As stated above, defendants did not timely respond to the motion for attorneys' fees, but previously argued that PNC is not entitled to recover its attorneys' fees expended in defending defendants' counterclaims and raised new objections in the untimely Memorandum in Opposition filed on April 10, 2014.

In a diversity case such as this, federal courts follow state law regarding an award of attorneys' fees, absent conflict with a federal statute or court rule. Weitz Co. v. MH Washington, 631 F.3d 510, 528 (8th Cir. 2011). Under applicable Missouri law, a prevailing party cannot recover attorneys' fees from another party, except when allowed by contract or statute. Berry v. Volkswagen Group of America, Inc., 397 S.W.3d 425, 431 (Mo. 2013) (en banc); see Trim Fit, LLC v. Dickey, 607 F.3d 528, 532 (8th Cir. 2010) (citing Essex Contracting, Inc. v. Jefferson Cnty., 277 S.W.3d 647, 657 (Mo. 2009) (en banc)).

In this case, the various loan documents include attorneys' fee provisions. The Note includes the following language regarding attorneys' fees, expenses and court costs:

> **ATTORNEYS' FEES; EXPENSES**. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrow will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

Note at 2 (Complaint Ex. A, Frahlman Aff. Ex. C). The Deed of Trust includes the following language regarding attorneys' fees:

> **ATTORNEYS' FEES**. In the event of default, Grantor agrees to pay reasonable attorneys' fees incurred by Bank. Such reasonable attorneys' fees shall include, without limitation, paralegal fees. Any such reasonable attorneys' fees shall be

added to the principal amount of the Obligations, shall accrue interest at the same rate as the Obligations, and shall be secured by this Deed of Trust.

Deed of Trust at 4, ¶ 22 (Complaint Ex. F, Frahlman Aff. Ex. D).  The Assignment of Rents states that in the event of default, PNC shall have the right "[t]o recover reasonable attorneys' fees to the extent not prohibited by law."  Assignment of Rents at 2, ¶ 9.B (Complaint Ex. H; Frahlman Aff. Ex. F).  Finally, the Guaranty includes the following provision regarding attorneys' fees, costs and expenses:

> The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

Guaranty at 1, ¶ 5 (Complaint Ex. D; Frahlman Aff. Ex. G).

PNC is therefore entitled to recovery of its reasonable attorneys' fees as set forth in the loan documents and Guaranty.

### A.  Recovery of Attorneys' Fees for Defending Counterclaims

The Court first addresses defendants' argument that despite the foregoing contractual language, PNC cannot recover its attorneys' fees expended in connection with defending against defendants' counterclaims.  As previously stated, defendants have not cited any case law or contract language in support of their argument, and the Court finds the argument to be without merit.  In Missouri, a trial judge is deemed to be an expert on the subject of attorney's fees.  Nelson v. Hotchkiss, 601 S.W.2d 14, 21 (Mo. 1980) (en banc).  "[T]he amount of attorney's fees to be awarded is within the trial court's sound discretion and should not be reversed unless the award is determined arbitrarily or is so unreasonable as to indicate indifference and the lack of proper judicial consideration."  Bacon v. Uhl, 173 S.W.3d 390, 399 (Mo. Ct. App. 2005).  In Bacon, it was held not to be an abuse of discretion for the trial court to award the plaintiffs significant attorneys' fees in

what the defendants characterized as a "fairly simple breach of contract matter" where the trial court found that much of the fees expended were caused by the defendants' denial that they owed anything on the note and their pursuit of a counterclaim against the plaintiffs. Id. Thus, Missouri law permits a note holder to recover its attorneys' fees expended in defending an unsuccessful counterclaim.[4]

In this case, as in Bacon, the defendants' tactics in vigorously defending PNC's claims and pursuing multiple affirmative defenses and counterclaims changed the case from what should have been a relatively simple action to recover on a Note and Guaranty and to appoint a receiver to liquidate collateral, to a much more complicated lawsuit. The Court notes that all of defendants' affirmative defenses and the two counterclaims that did not settle were unsuccessful. Therefore, PNC is entitled to an award of its reasonable attorneys' fees, expenses, and costs incurred in pursuing this suit as well as defending the counterclaims.

B. Reasonableness of PNC's Attorneys' Fees

Although a trial court has discretion to award reasonable attorneys' fees in Missouri, various factors are appropriately considered to determine the amount of fees to award. Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 523 (Mo. 2009) (en banc). The calculation begins with the lodestar amount, which is "determined by multiplying the number of hours reasonably expended by a

---

[4]This appears to be the general rule in other states as well, as recognized by the Eighth Circuit Court of Appeals. See, e.g., Duryea v. Third Northwestern Nat'l Bank of Minneapolis, 606 F.2d 823, 826 (8th Cir. 1979) (under Minnesota law, where note allowed bank to charge debtor for costs of collection, including attorneys' fees, the district court properly included the bank's cost of defending the debtor's illegal banking practices claim as well as the bank's cost of prosecuting its counterclaim on the note); Taylor v. Continental Supply Co., 16 F.2d 578, 580-81 (8th Cir. 1926) (under Colorado law, provision in note for lender's recovery of attorneys' fees for collection of its claim included costs of bringing suit on note and defending counterclaim); see also Boone v. Wells Fargo Bank, N.A., 2009 WL 2461736, at *1 (D. Minn. Aug. 10, 2009) ("[A] successful creditor may recover attorneys fees and costs incurred in connection with defending against claims because such a defense is necessary to collect the amounts owed to the creditor.").

reasonable hourly rate in the community." Berry, 397 S.W.3d at 429, n.3. In the exercise of the trial court's discretion, other factors are also considered in addition to the lodestar. See id. at 431. One such consideration is the result achieved. Id. (citing O'Brien v. B.L.C. Ins. Co., 768 S.W.2d 64, 71 (Mo. 1989) (en banc)). Other relevant factors used in determining the reasonable value of attorneys' fees may include the following:

> 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

Berry, 397 S.W.3d at 431 (quoted case omitted).

Here, PNC has provided the Court with information concerning the hourly rates customarily charged by its attorneys, but states that each attorney's time was billed at a discounted rate from standard rates charged by the firm.[5] Although PNC did not submit information concerning rates charges by other attorneys in the community for similar services, the Court is generally familiar with rates charged by attorneys in St. Louis and has reviewed the most recent list of attorney billing rates published by the Missouri Lawyer's Weekly on June 17, 2013. See Berry, 397 S.W.3d at 431 (referencing the 2012 Missouri Lawyer's Weekly published list of billing rates).

---

[5]Based on the Court's calculations (obtained by dividing the total amount billed by each attorney by the billed hours per attorney, as shown in the chart on page two of Ms. Alper-Pressman's affidavit), it appears that Ms. Alper-Pressman's time was billed at approximately $345 per hour instead of her usual rates of $400-415 per hour; Ms. Kiser's time was billed at approximately $187 per hour instead of her usual rates of $225-245 per hour; Mr. Redd's time was billed at approximately $58 per hour instead of his usual rates of $215-225 per hour; and K. Haegele's time (a total of .2 hours) was billed at approximately $140 per hour instead of usual rates of $165-175 per hour.

The Court finds that the hourly rates of PNC's attorneys, as discounted, are reasonable under the circumstances of this case, based on the Court's experience in awarding attorneys' fees and its knowledge of prevailing market rates, as well as the nature and character of the services provided by PNC's attorneys, their expertise and performance, and the results obtained in this case. PNC's attorneys achieved the results sought by its suit: the appointment of a receiver over the property for which PNC loaned money to the defendants, and a judgment of approximately $600,000 against the defendants on the Note and personal Guaranty.

PNC seeks fees of $53,500.00 for 212.40 attorney hours expended by Lathrop & Gage attorneys in this litigation, and $3,500.00 for 11.8 hours expended by the Mayer Brown firm to document a proposed renewal of the Note to El Tovar following its maturity in April 2012 that was never finalized. Mot. for Fees at 2; Frahlman Aff. at 2, ¶ 6. The Court has reviewed the detailed billing records of Lathrop & Gage and Mayer Brown submitted by PNC in support of its motion for attorneys' fees.

Defendants have argued previously that PNC unnecessarily multiplied the litigation. The Court rejects this assertion and places responsibility for multiplication of the proceedings squarely on the defendants. The billing records indicate that PNC incurred at least $15,000 in attorneys' fees directly as a result of having to defend the unsuccessful counterclaims asserted by defendants; $6,500 in fees in connection with the mediation; approximately $3,600 in fees in connection with its Motion to Enforce Settlement; approximately $6,500 in fees in connection with the Motion for Order to Show Cause. In contrast, PNC incurred approximately $20,000 in fees in connection with preparing the filing the suit, obtaining appointment of a receiver, responding to discovery and prosecuting the case to a successful conclusion.

In the untimely opposition memorandum, defendants make the conclusory assertion that all of the fees incurred by PNC are "excessive, considering that bringing the lawsuit in the first place was optional." Defs.' Mem. Opp. at 4-5 (Doc. 110). The Court rejects this assertion. The loan documents as quoted above provide for PNC's recovery of its attorneys' fees expended in collection of the Note and enforcement of the personal Guaranty. PNC's decision to file suit and seek the appointment of a receiver, rather than to engage in a nonjudicial foreclosure as defendants argue it should have, does not change the facts that defendants are in default under the Note and Guaranty, that PNC incurred fees to collect on the Note and Guaranty because of defendants' default, or otherwise cause PNC to forfeit its contractual rights under the loan documents.[6]

Defendants also argue that PNC is not entitled to the $3,500.00 in fees billed by the Mayer Brown firm or $1,522.50 in fees billed by Lathrop & Gage because defendants claim that the parties on two occasions agreed to "an extension" of the matured loan but then PNC unreasonably "unilaterally changed the terms of the agreement in the proverbial 'eleventh hour' and after PNC Bank had incurred significant attorney's fees." Defs.' Mem. Opp. at 2. The Court has considered this argument and finds it to be without merit, in part because, as the Court has previously found, no settlement or refinancing agreement was ever reached between the parties and the defendants were in default under the loan documents at all relevant times.[7] PNC's attorneys' fees incurred in

---

[6]The fact that defendants owed thousands of dollars in real property taxes and sewer charges such that tax and sewer liens had been imposed on the property, and had deferred maintenance to the extent that a portion of the property was condemned by the City of St. Louis, may well have factored into PNC's decision not to pursue a nonjudicial foreclosure.

[7]The Court notes that the "Term Sheet" attached as Exhibit A to defendant's untimely opposition memorandum clearly states that the Term Sheet did not represent a final agreement between the parties. The Term Sheet states in pertinent part in bold type:

This Term Sheet does not represent a commitment of the Bank to forbear or modify

failed renegotiation attempts are recoverable under the terms of the loan documents as these were fees incurred in an attempt to collect on the Note and Guaranty following defendants' default.

The Court has reviewed the billing records of Mayer Brown and has not identified any time expenditures that it deems unnecessary, duplicative or unreasonable. The Court finds that the hourly rates charged are reasonable for the work involved, whether the rates are evaluated by St. Louis standards or those of Chicago, where Mayer Brown is located.[8]

The defendants challenge four specific time expenditures by the Lathrop & Gage firm as excessive: 3.8 hours to prepare a two-page demand letter; 7.9 hours to prepare for and attend a motion for appointment of receiver; 4.7 hours to prepare a draft mediation statement; and 1.8 hours

---

the existing Loan Documents nor does it contain all matters upon which agreement must be reached in order for the modifications contemplated hereby to be consummated, but only represents the suggested terms which the Bank is willing to present to its appropriate credit committees. No such commitment on the part of the Bank shall exist unless and until Bank's credit committee has determined and approved the terms and conditions of the loan modifications and all documents evidencing or required by such terms and conditions have been fully executed by all parties and received and approved by Bank (the time at which all of the foregoing described events shall have occurred, the "Closing"). The Closing shall occur not later than April 30, 2013.

Defs.' Mem. Opp., Ex. A at 1.

The Term Sheet also states that "the indebtedness evidenced by the Loan Documents is now due and payable" and that it "does not represent any waiver by the Bank of the existing defaults nor does this Term Sheet constitute any agreement by Bank that the indebtedness evidenced by the Loan Documents is not now due and payable." Id. at 2. Finally, the Term Sheet states, "Furthermore, this Term Sheet does not evidence any agreement by Bank to forebear from exercising any and all remedies available to it pursuant to the Loan Documents, all of which rights and remedies are expressly reserved by Bank."

[8]11.1 of the 11.8 hours billed by Mayer Brown were for Ms. Dougherty at approximately $288 per hour; one-half hour was billed by Ms. O'Keefe at approximately $425 per hour; and two-tenths of an hour were billed by Ms. Romick at approximately $412 per hour.

to review and revise "a simple affidavit" in support of PNC's motion for summary judgment.  The Court will address each objection in turn.

While 3.8 hours to prepare a demand letter might seem excessive at first glance, the time records indicate that 2.1 hours of that time was spent making and incorporating multiple changes requested by PNC.  This is reasonable.  The time expended to prepare for and attend the scheduled hearing on PNC's motion for appointment of receiver is also reasonable.  The Court rejects as both speculative and inconsistent with defendants' prior position taken in this litigation, defendants' unsupported assertion "it was a foregone conclusion that a receiver would be appointed given PNC Bank's absolute right to a receiver pursuant to the expressed [*sic*] terms of the deed of trust."  Defs.' Mem. Opp. at 4.  The Court notes that defendants' opposition to PNC's motion for appointment of a receiver argued that in spite of the contractual language, appointment of a receiver was an "extraordinary equitable remedy" under Eighth Circuit precedent that should not occur in the instant case.  See Defs.' Suggestion of Law and Facts in Opp. to Pl.'s Amended Mot. for Appointment of Receiver (Doc. 20).  A hearing before the Court was scheduled on PNC's motion for appointment of a receiver and its counsel had to be prepared for the defendants to continue to press their opposition at that hearing.

The expenditure of 4.7 hours to draft a mediation statement is also reasonable.  The mediation process is involved and demanding, and is an important tool through which many disputes are resolved at a reduced expense when compared to motion practice or trial.  The Order Referring Case to Alternative Dispute Resolution required the parties to provide the neutral, ten days prior to the ADR conference, "a memorandum presenting a summary of disputed facts and a narrative discussion of its position relative to both liability and damages."  At the time this case was referred to ADR, the defendants had asserted three counterclaims and numerous affirmative defenses and

were actively defending PNC's claims. This was a vigorously contested case and, as such, PNC was required to expend additional attorney time to assert and protect its interests.[9]

The Court rejects defendants' assertion that 1.8 hours to review and revise the Michael Frahlman Affidavit is unreasonable. This detailed, nine-page affidavit by a member of PNC's Commercial Banking Asset Resolution Team incorporated thirteen exhibits and was an important supporting aspect of PNC's successful motion for summary judgment. Further, the expenditure of 1.8 hours revising the affidavit is undoubtedly reasonable where prior time entries indicate that only .5 hours (on December 6, 2013) were spent on the initial drafting of the affidavit and .2 hours (on December 11, 2013) discussing the affidavit with the client.

Finally, the Court denies defendants' alternative request to stay PNC's motion for attorneys' fees and expenses to "grant Defendant leave of court to conduct discovery with respect to the facts and circumstances pertaining to the parties' settlement contract." Defs.' Mem. Opp. at 5. As stated previously, the Court has found that no settlement took place in this matter as defendants admitted in open court that PNC's settlement offer contained a contingency.

For the foregoing reasons, the Court finds that PNC's attorneys' fees, as claimed, are reasonable. The Court will award PNC its reasonable attorneys' fees, pursuant to the language of the loan documents and Guaranty, in the amount of $57,000.

C. Recovery of Taxable Costs

PNC's Motion for Bill of Costs seeks the recovery of its taxable costs as a prevailing party. PNC seeks costs of $1,837.63 it incurred in filing the case, issuing subpoenas, engaging in mediation

---

[9]The Court recalls the parties stating in open court that the mediation lasted for nine hours.

and making copies. As previously stated, defendants have not made any response to PNC's Motion for Bill of Costs.

PNC seeks costs as follows:

| | | |
|---|---|---|
| • | Fees of the clerk | $ 400.00 |
| • | Fees for service of summons | 514.00 |
| • | Fees for exemplification and copies | 23.63 |
| • | Fees for the mediator | 900.00 |
| | | $ 1,837.63 |

PNC's requests for its costs expended is governed by Rule 54(d), Fed. R. Civ. P., and 28 U.S.C. § 1920. Allowable costs in most cases are limited to the categories set forth in 28 U.S.C. § 1920, and expenses not on the statutory list must be borne by the party incurring them. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987). The Court must carefully scrutinize the claimed costs and the support offered for them. Farmer v. Arabian American Oil Co., 379 U.S. 227, 232-33, 235 (1964); Alexander v. National Farmers Org., 696 F.2d 1210, 1212 (8th Cir. 1982). Taxable costs under § 1920 include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts and interpreters under 28 U.S.C. § 1828. The Court will address each category of PNC's claimed costs.

*1. Fees of the Clerk*

PNC is entitled to recover Clerk's fees of $400 for the filing fee, pursuant to § 1920(1).

*2. Fees for Service of Summons and Subpoena*

PNC seeks reimbursement of private process server fees for issuance of subpoenas and process server fees, under § 1920(1). The Eighth Circuit Court of Appeals has held, however, that

§ 1920 contains no provision for use of a private process server and only allows taxation of service fees by the United States Marshal. See Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985). This Court is, of course, bound to follow Eighth Circuit precedent. See Marez v. Saint-Gobain Containers, Inc., 2011 WL 1930706, at *15 (E.D. Mo. May 18, 2011); see also Bunda v. Potter, 2006 WL 2665134, at **3-6 (N.D. Iowa Jan. 31, 2006) (discussing Crues in depth; concluding that "while other courts have permitted the recovery of special process fees, this court is compelled to follow Eighth Circuit precedent regardless of the equities at play in the facts of this case."). The Court will not tax this fees as a cost but will consider, *infra*, whether PNC can recover the process server fees as an expense of collection pursuant to the loan documents.

### 3. Fees for Mediation

PNC seeks reimbursement of the fees it paid the mediator as an item of taxable cost. The Eighth Circuit has held that mediator's fees do not constitute an item of taxable cost under 28 U.S.C. § 1920. Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002). Accordingly, PNC cannot recover the cost of mediation as an item of taxable cost under § 1920, but the Court will consider, *infra*, whether PNC can recover the mediator's fees as an expense of collection pursuant to the loan documents.

### 4. Fees for exemplification and copies of papers

Finally, PNC seeks costs for in-house photocopies in the amount of $23.63 pursuant to § 1920(4). "Expenses for photocopies 'necessarily obtained for use in the case' are recoverable by the prevailing party as costs. 28 U.S.C. § 1920 (2000). Rule 54(d) directs that costs, such as necessary photocopies, 'shall be allowed as of course to the prevailing party unless the court otherwise directs.' Fed. R. Civ. P. 54(d)." Concord Boat Corp. v. Brunswick Corp., 309 F.3d 494, 498 (8th Cir. 2002).

Amounts sought for copy expenses must be documented or itemized in such a way that the Court can meaningfully evaluate the request.  <u>Yaris v. Special Sch. Dist. of St. Louis County</u>, 604 F. Supp. 914, 915 (E.D. Mo. 1985), <u>aff'd</u>, 780 F.2d 724 (8th Cir. 1986); <u>Lee ex rel. Lee v. Borders</u>, 2013 WL 1316985, at ** 2-3 (E.D. Mo. Mar. 29, 2013) ("The submission of an affidavit that affirms in a general way that the expenses listed were necessarily incurred in the defense in the case is not an adequate substitute for providing appropriate documentation.").

PNC supports its copy costs with the affidavit of Ms. Alper-Pressman, which states that PNC incurred costs for copying documents delivered to the Court and opposing counsel in connection with its motion to dismiss and motion for summary judgment.  <u>See</u> Bill of Costs, Ex. 3 at 1, ¶ 3.  The affidavit further states that the amount was calculated by multiplying the number of pages copied by the per-page rate of seventeen cents per page.  <u>Id.</u>  Because the undersigned requires that parties provide it with a paper courtesy copy of all dispositive motions and supporting materials, the copies were necessarily obtained for use in the case and their cost will be taxed.

For the foregoing reasons, the Court will grant in part and deny in part PNC's Motion for Bill of Costs.  To summarize, the Court will order the following costs taxed:

- Fees of the clerk $ 400.00
- Fees for exemplification and copies <u>23.63</u>

Total costs taxed <u>$ 423.63</u>

### D.  Recovery of Other Expenses of Collection

Pursuant to the terms of the loan documents and Guaranty, PNC seeks to recover from the defendants certain other expenses of collection it incurred following defendants' default: computer forensics of $751.00 necessary to respond to discovery requests; title company and recording fees

of $1,096.00; travel and meals of $32.67; and document delivery services of $60.42. As stated above, the Court will also consider whether PNC can recover from the defendants as contractual expenses of collection the mediator's fee of $900.00 and private process server fees of $514.00.

Under Missouri law, "If a contract provides for the payment of attorney's fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc., 300 S.W.3d 602, 612 (Mo. Ct. App. 2009) (citing Sheppard v. East, 192 S.W.3d 518, 523 (Mo. Ct. App. 2006)). As quoted above, the Note provides that defendant El Tovar shall pay PNC its "attorneys' fees and Lender's legal expenses" if El Tovar, as borrower, fails to pay the Note when due and PNC has to take steps to collect on the Note. Note at 2. The Guaranty provides that defendant Parrish "will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings." Guaranty at 1, ¶ 5.

The Court finds that PNC is entitled to judgment against the defendants for the contractual expenses of collection it seeks pursuant to the terms of the Note and Guaranty, and the mediator's fee and private process server fees, as all are legal expenses incurred by PNC following defendants' default and in connection with its efforts to collect the Note and enforce the Guaranty.[10] The Court will therefore award PNC the sum of $3,293.67 for its non-taxable contractual expenses of collection.

---

[10]PNC's expenses for attorney travel and meals are recoverable under the terms of the loan documents, although these out-of-pocket expenses are more properly characterized as part of an attorneys' fee request. See Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996) (per curiam) (citing cases).

E.  Post-Judgment Interest

Finally, PNC asks the Court to "enter an order allowing recovery of" its attorneys' fees,

taxable costs and non-taxable legal expenses "for a total judgment of . . . $662,767.68, with interest

to accrue thereon from and after December 12, 2013 at the contract rate of 126.41 per diem[.]" Mot.

for Attys' Fees at 9-10.  The defendants have not responded to this request.

PNC's request for post-judgment interest at the contract rate set forth in the Note is made

under § 408.040.1 (2000), Missouri Revised Statutes, which provides for post-judgment interest in

non-tort actions as follows:

> In all nontort actions, interest shall be allowed on all money due upon any
> judgment or order of any court from the date judgment is entered by the trial court
> until satisfaction be made by payment, accord or sale of property; *all such judgments
> and orders for money upon contracts bearing more than nine percent interest shall
> bear the same interest borne by such contracts, and all other judgments and orders
> for money shall bear nine percent per annum until satisfaction made as aforesaid.*

§ 408.040.1 (emphasis added).

A federal statute, however, provides that "[i]nterest shall be allowed on any money judgment

in a civil case recovered in a district court" at an interest rate based on United States Treasury bill

yield.  28 U.S.C. § 1961(a).  The Eighth Circuit has held that the federal post-judgment interest rate

applies to cases tried in federal court, even when the basis for jurisdiction is diversity of citizenship.

Maddox v. American Airlines, Inc., 298 F.3d 694, 699-700 (8th Cir. 2002); see Happy Chef Sys.,

Inc. v. John Hancock Mut. Life Ins. Co., 933 F.2d 1433, 1435 (8th Cir. 1991) ("In a diversity action,

state law governs prejudgment interest; federal law governs postjudgment interest.").  Therefore,

post-judgment interest will accrue at the rate identified in 28 U.S.C. § 1961(a), and not the contract

rate.  This aspect of PNC's motion is denied.

## IV. Conclusion

For the foregoing reasons, plaintiff PNC Bank's Motion to Strike defendants' Motion for Rehearing should be denied, because a motion to strike may only be directed to a pleading. Defendants' Motion for Rehearing, construed as a motion under Rule 59(e), Fed. R. Civ. P., should be denied as it fails to establish any basis for relief under Rule 59(e). PNC Bank's Motion for Attorneys' Fees and Expenses should be granted as set forth above, and PNC is entitled to judgment against the defendants, jointly and severally, for contractual attorneys' fees in the amount of $57,000.00 and contractual expenses of collection in the amount of $3,293.67. The Clerk will be directed to tax costs against the defendants, jointly and severally, in the amount of $423.63. Post-judgment interest shall accrue at the federal statutory rate, and an amended judgment will issue separately.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff PNC Bank's Motion to Strike defendants' Motion for Rehearing is **DENIED**. [Doc. 105]

**IT IS FURTHER ORDERED** that defendants' Motion for Rehearing, construed as a motion under Rule 59(e), Fed. R. Civ. P., is **DENIED**. [Doc. 104]

**IT IS FURTHER ORDERED** that plaintiff PNC Bank's Motion for Attorneys' Fees and Expenses is **GRANTED** to the extent that PNC is entitled to judgment against the defendants, jointly and severally, for contractual attorneys' fees in the amount of $57,000.00 and contractual expenses of collection in the amount of $3,293.67, for a total of $60,293.67. [Doc. 103]

**IT IS FURTHER ORDERED** that plaintiff PNC Bank's Motion for Bill of Costs is **GRANTED** to the extent that costs will be taxed in the amount of $423.63. [Doc. 109]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall tax costs against defendants El Tovar, Incorporated and Steven D. Parrish, jointly and severally, in the amount of Four Hundred Twenty-Three Dollars and Sixty-Three Cents ($423.63).

**IT IS FINALLY ORDERED** that the Court will enter an Amended Judgment in accordance with this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  23rd  day of April, 2014.